Christopher J. Brennan, #220072
**BAUMAN LOEWE WITT & MAXWELL, PLLC**
8765 E. Bell Road, Suite 204
Scottsdale, AZ 85260
Telephone: (480) 502-4664
Facsimile: (480) 502-4774
cbrennan@blwlawfirm.com

*Attorneys for Defendant and*
*Counterclaimant Hartford Fire Insurance Co.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CAIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>LAPMASTER INTERNATIONAL, LLC and HARTFORD INSURANCE CO.<br><br>Defendants.<br><br>HARTFORD FIRE INSURANCE CO, individually and as subrogee of Lapmaster International, LLC,<br><br>Counterclaimant,<br><br>v.<br><br>MASON AND DIXON INTERMODAL, INC.<br><br>Counterclaimant. | Case No. CV-08-1232-MEJ<br><br>**ANSWER OF DEFENDANT HARTFORD FIRE INSURANCE COMPANY, ERRONEOUSLY SUED AS HARTFORD INSURANCE CO., TO MASON AND DIXON INTERMODAL, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT; AND HARTFORD FIRE INSURANCE COMPANY'S COUNTERCLAIMS AGAINST MASON AND DIXON INTERMODAL, INC.** |

Defendant HARTFORD FIRE INSURANCE COMPANY, erroneously sued as Hartford Insurance Co. ("Hartford" or "Defendant"), answers the Complaint of Mason and Dixon Intermodal, Inc. ("MDII") and alleges Counterclaims as follows:

### ANSWER TO "JURISDICTION AND VENUE"

1.      Defendant denies each and every allegation in the Complaint that is not expressly admitted herein.

2.      Answering Paragraph 1, Defendant admits the allegation in that Paragraph.

1

1    3.    Answering Paragraph 2, Defendant admits the allegation in that Paragraph.

2    4.    Answering Paragraph 3, Defendant admits the allegation in that Paragraph.

3    ### ANSWER TO "PARTIES" ALLEGATIONS

4    5.    Answering Paragraph 4, Defendant lacks sufficient information or belief to admit

5    or deny the allegations as to MDII, and on that ground, denies the allegations.

6    6.    Answering Paragraph 5, Defendant admits the allegations in that Paragraph.

7    7.    Answering Paragraph 6, Defendant admits the allegations in that Paragraph.

8    8.    Answering Paragraph 7, Defendant admits the allegations in that Paragraph.

9    9.    Answering Paragraph 8, Defendant admits the allegations in that Paragraph.

10    10.    Answering Paragraph 9, Defendant admits the allegations in that Paragraph, but

11    contends that Hartford Fire Insurance Company is the proper party. Hartford Fire Insurance

12    Company is a corporation organized under the laws of the State Connecticut, with its principle

13    place of business located in Connecticut.

14    11.    Answering Paragraph 10, Defendant denies the allegations insofar as the allegation

15    is not accurate.    Hartford, after indemnifying its insured, Lapmaster International, LLC

16    ("Lapmaster"), is subrogated to the rights of Lapmaster pursuant to the doctrines of contractual

17    and equitable subrogation.  Hartford is seeking recovery for damage to a Precision Flat Polishing

18    Machine and a Precision Flat Lapping Machine ("the Machines") caused by the act and omissions

19    of Plaintiff and Third-Party Defendants.

20

21    ### ANSWER TO "BACKGROUND ALLEGATIONS"

22    12.    Answering Paragraph 11, Defendant denies the allegations.  In December, 2007,

23    the Machines were shipped by Hamia Co., Ltd. in Tokyo, Japan from the Yokohama, Japan port.

24    *See* Nippon Express Waybill ("Port of Loading"), a true and correct copy of which is attached as

25    Exhibit A and incorporated by reference.  The place of delivery was Oakland, California.  *See*

26    Exhibit A referencing "Port of Discharge" and "Place of Destination".

27    13.    Answering Paragraph 12, Defendant admits that Nippon Express issued the

28

1  Waybill, but lack sufficient information or belief to admit or deny the remaining allegations, and

2  on that ground, denies the allegations.

3      14.    Answering Paragraph 13, Defendant denies the allegations.  Nippon Express was

4  not involved in arranging for the ground transportation.

5      15.    Answering Paragraph 14, Defendant denies the allegations.

6      16.    Answering Paragraph 15, Defendant denies the allegations.

7      17.    Answering Paragraph 16, Defendant lacks sufficient information or belief to admit

8  or deny the allegations as to who prepared the Waybill, and on that ground, denies the allegations.

9      18.    Answering Paragraph 17, Defendant admits the allegations in that Paragraph

10  inasmuch as MDII transported the Machines from the Port of Oakland. However, the

11  transportation was never completed because MDII trucks crashed into overpasses.

**ANSWER TO "COUNT ONE"**

13      19.    Answering Paragraph 18, Defendant incorporates by reference their answers to all

14  Paragraphs above.

15      20.    Answering Paragraph 19, Defendant denies the allegations.

16      21.    Answering Paragraph 20, Defendant denies the allegations.

17      22.    Answering Paragraph 21, Defendant denies the allegations.

18      23.    Answering Paragraph 22, Defendant admits that Plaintiff has requested a judicial

19  determination of the rights and duties of the parties. Defendant denies the remaining allegations in

20  Paragraph 22, and specifically denies that MDII's liability is limited to $500.00 for each Machine

21  MDII permanently damaged.

**ANSWER TO "COUNT TWO"**

23      24.    Answering Paragraph 23, Defendant incorporates by reference their answers to all

24  Paragraphs above.

25      25.    Answering Paragraph 24, Defendant denies the allegations.  Third-Party

26  Defendants knew and communicated to MDII the dimensions of the Machines.

27      26.    Answering Paragraph 25, Defendant denies the allegations.  Third-Party

28

**HARTFORD'S ANSWER AND COUNTERCLAIMS**

1  Defendants knew and communicated to MDII the dimensions of the Machines.  MDII, as a "motor
2  carrier engaged in the performance of intermodal trucking services," knew or should have known
3  the load it was carrying exceeded the height of the overpasses.  MDII actions/inactions were the
4  direct cause of the impact between the Machines and the overpasses.

5      27.    Answering Paragraph 26, Defendant denies the allegations.    Third-Party
6  Defendants knew and communicated to MDII the dimensions of the Machines.  MDII, as a "motor
7  carrier engaged in the performance of intermodal trucking services," knew or should have known
8  the load it was carrying exceeded the height of the overpasses.

9      28.    Answering Paragraph 27, Defendant denies the allegations.

10     29.    Answering Paragraph 28, Defendant denies the allegations, and specifically denies
11 that they are responsible to indemnify and reimburse MDII for the physical harm, damage, and
12 liability caused by MDII's transport of the Machines.

13

14                          **AFFIRMATIVE DEFENSES**

15                          FIRST AFFIRMATIVE DEFENSE

16                             (Contractual Liability)

17     Under the terms of the written agreements between Plaintiff and Defendants, Plaintiff is
18 not entitled to a declaration of non-liability or to any defense and indemnity from Defendants.
19 Instead, under the terms of the agreements, Defendants are entitled to recover from Plaintiff for
20 cargo damage and other damages, losses and expenses arising out of the matters referred to in the
21 Complaint.

22                          SECOND AFFIRMATIVE DEFENSE

23                          (Failure to Safely Deliver Cargo)

24     Under the agreements, Plaintiff was required to use due diligence to provide safe transport
25 and delivery of the cargo from Oakland, California to Fremont, California. Plaintiff failed to use
26 such due diligence, failed to perform the terms and conditions of the agreements, failed to safely
27 deliver the cargo, and damaged the cargo through its own conduct and/or the conduct of its agents

28
                                          4

1  or subagents, all in violation of requirements of the agreements and applicable laws.

2  <center>THIRD AFFIRMATIVE DEFENSE</center>

3  <center>(Limitation of Liability Not Applicable)</center>

4  Plaintiff is not entitled to limitation of liability under the carriage of Goods by Sea Act,

5  ("COGSA"), 46 U.S.C. §§ 1300, et seq., with regard to the damages claimed by Defendants.

6  <center>FOURTH AFFIRMATIVE DEFENSE</center>

7  <center>(Failure to State a Cause of Action)</center>

8  Defendant alleges that the Complaint in its entirety fails to state facts sufficient to

9  constitute a cause of action as against these answering Defendants.

10  <center>FIFTH AFFIRMATIVE DEFENSE</center>

11  <center>(Liability for Acts of Agents or Subagents)</center>

12  Plaintiff is responsible in contract and tort for all damage to cargo and other damages,

13  losses and expenses resulting from its conduct.

14  <center>SIXTH AFFIRMATIVE DEFENSE</center>

15  <center>(Negligence of Principal or Agent)</center>

16  Plaintiff, and/or its agents or subagents, failed to exercise due care in the transportation of

17  the cargo, which proximately caused the damage to the cargo, and the other damages, losses and

18  expenses referred to in the Complaint.

19  <center>SEVENTH AFFIRMATIVE DEFENSE</center>

20  <center>(Negligence or Fault of Third Parties)</center>

21  The damage to cargo and other damages, losses and expenses referred to in the Complaint

22  were proximately caused by, or contributed to, by the conduct of third parties for which Defendant

23  is not responsible.

24  <center>EIGHTH AFFIRMATIVE DEFENSE</center>

25  <center>(Carrier Burden as to Load and Stowage)</center>

26  The cargo was received by Plaintiff from the shipper in apparent good order and condition.

27  The cargo was damaged en route from Oakland to Fremont in an accident(s). The cargo was

28

<center>**HARTFORD'S ANSWER AND COUNTERCLAIMS**</center>

1  damaged and destroyed. Defendants have therefore established a *prima facie* case of liability, and

2  Plaintiff has the burden of proof to demonstrate any alleged defects in loading or stowage.

### NINTH AFFIRMATIVE DEFENSE

#### (Proper Description of Cargo)

5  The Waybill and Import Dispatch properly identified the cargo and its measurements. The

6  cargo was properly marked. Plaintiff, and its agents or subagents, were therefore on notice at all

7  times as to the nature of the cargo and the precautions required by the carrier.

### TENTH AFFIRMATIVE DEFENSE

#### (Contributory or Comparative Fault of Carrier)

10  The cargo damage and the damages, losses and expenses referred to in the Complaint were

11  proximately caused, wholly or in part, by the negligence or fault of MDII, and/or its agents or

12  subagents.

### ELEVENTH AFFIRMATIVE DEFENSE

#### (Lack of Causation)

15  No acts, omissions or other conduct of Defendants, or of any other persons or parties

16  attributable to Defendants, proximately caused or contributed to the cargo damage or other

17  damages, losses and expenses referred to in the Complaint.

### TWELFTH AFFIRMATIVE DEFENSE

#### (Mitigation of Damages)

20  Defendants at all times acted properly to mitigate damages resulting from or incurred in

21  connection with the accident(s) referred to in the Complaint.

### THIRTEENTH AFFIRMATIVE DEFENSE

#### (Assumption of Risk)

24  Plaintiff assumed the risk of the losses and damages resulting from the accident(s) referred

25  to in the Complaint.

26  ////

27  ////

**HARTFORD'S ANSWER AND COUNTERCLAIMS**

1

### FOURTEENTH AFFIRMATIVE DEFENSE

2

#### (Improper Party and/or Absence of Indispensable Party)

3     Hartford alleges that ITG Transportation Services, Inc. and West Forwarding Services are

4 the proper party Defendants. In the event this allegation is incorrect, and if affiliates or

5 subsidiaries of Third-Party Defendants are the proper parties, then there is, or may be, an improper

6 party, absence of the real party in interest, or absence of an indispensable party for assertion of

7 Plaintiff's claims.

8

### FIFTEENTH AFFIRMATIVE DEFENSE

9

#### (Waiver)

10     Defendant is informed and believes, and thereon alleges, that Plaintiff has engaged in

11 conduct that constitutes a waiver of rights under the contract alleged. By reason of such waiver,

12 Defendants are excused from further performance of the obligations under the alleged contract.

13

### SIXTEENTH AFFIRMATIVE DEFENSE

14

#### (Estoppel)

15     Defendant is informed and believes, and thereon alleges, that by reason of the conduct of

16 Plaintiff which constitutes a breach of contract, tortious conduct, waiver, unclean hands and

17 laches, Plaintiff is estopped to assert a right to relief against this answering Defendant.

18

### EIGHTEENTH AFFIRMATIVE DEFENSE

19

#### (Release)

20     Defendant is informed and believes, and thereon alleges, that the Plaintiff's actions

21 constitute a full release and waiver of any and all claims which may have existed against this

22 answering Defendant.

23

### NINETEENTH AFFIRMATIVE DEFENSE

24

#### (Unjust Enrichment)

25     The Complaint is barred because the Plaintiff would be unjustly enriched if it prevailed on

26 its Complaint.

27

28

<div align="center">

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Lack of Consideration)**

</div>

Each of the causes of action contained in the Complaint is barred by failure of consideration.

<div align="center">

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Laches)**

</div>

Defendant is informed and believes, and thereon alleges, that Plaintiff unreasonably delayed bringing suit against this Defendant, thereby prejudicing Defendants' rights. Therefore, all of the equitable causes of action of the Complaint are barred by the Doctrine of Laches.

<div align="center">

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

</div>

Defendant is informed and believes, and thereon alleges, that Plaintiff engaged in inequitable conduct, which conduct constitutes unclean hands, and by engaging in said conduct, Plaintiff is, therefore, barred from seeking equitable relief upon such causes of action contained in Plaintiff's Complaint.

<div align="center">

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Breach of Obstruction)**

</div>

Defendant alleges that Plaintiff is barred from recovery against this Defendant because of its failure to fulfill its contractual obligations to this Defendant, which duties, promises, and contractual obligations it breached and anticipatorily repudiated, thereby excusing non-performances, if any, by the Defendants.

<div align="center">

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Breach)**

</div>

Plaintiff is barred from any recovery because of its failure to fulfill its contractual obligations to this answering Defendant.

////

////

1

<div align="center"><u>TWENTY FIFTH AFFIRMATIVE DEFENSE</u></div>

2

<div align="center"><u>(Violation of Duty of Good Faith)</u></div>

3 Defendant alleges that Plaintiff's actions have not been brought in good faith and are

4 frivolous. Therefore, the Defendants are entitled to reasonable expenses and attorney's fees

5 incurred in defending this suit.

6

<div align="center"><u>TWENTY SIXTH AFFIRMATIVE DEFENSE</u></div>

7

<div align="center"><u>(Reservation of Right to Amend)</u></div>

8 Defendant hereby expressly reserves the right to supplement or amend these affirmative

9 defenses predicated upon the discovery of additional issues or facts that may arises in the course of

10 discovery in preparation for trial in this matter.

11

12

<div align="center">**RELIEF REQUESTED**</div>

13 THEREFORE, Defendant requests the following relief in its Answer:

14 A. That the Court declare the respective rights and duties of the parties under the

15 agreements and applicable law, but deny Plaintiff any affirmative relief and, instead, declare

16 Defendant entitled to complete recovery for cargo damage and other damages, losses and expenses

17 arising out of the accident referred to in the Complaint and Counterclaims;

18 B. That the Court award Defendant attorneys' fees and costs to the extent allowed by

19 the written agreements and applicable law;

20 C. That the Court declare Defendant entitled to recover from Plaintiff under the

21 written agreements and applicable law;

22 D. For costs of suit; and

23 E. For such other legal or equitable relief as the Court deems proper.

24

<div align="center">**COUNTERCLAIMS OF HARTFORD**</div>

25 Defendant and Counterclaimant, Hartford Fire Insurance Company, erroneously sued as

26 Hartford Insurance Co. ("Hartford"), alleges the following Counterclaims against Counter-

27 defendant Mason and Dixon Intermodal, Inc. ("MDII"):

28

<div align="center">9</div>

**JURISDICTION AND VENUE**

1.      Jurisdiction of these Counterclaims is based on 28 U.S.C. §§ 1331 and 1333, in that the Counterclaims relate to cargo damage and present a federal question under federal common law and/or federal statutes.  This Court also has jurisdiction over the claims for declaratory relief under 28 U.S.C. § 2201.  This Court also has supplemental jurisdiction over Defendants' State law claims against MDII because these claims result from a common nucleus of operative facts and relate to the federal claims alleged in the Complaint and Counterclaims.

2.      Hartford is informed and believes and on that basis alleges that this Court also has jurisdiction of these Counterclaims based on diversity of citizenship, in that this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), in that the port of arrival of the cargo shipment was Oakland, California, within this Judicial District, and further, that the ground transportation of the Machines also occurred in this District.

4.      As alleged above, the port of arrival and the interchange of equipment occurred in Oakland, California. This action is therefore properly assigned in the San Francisco or Oakland Division of this Court.

**PARTIES:**

5.      Defendant, and Hartford's insured, Lapmaster, is, and was at all relevant times, an Illinois corporation with its principal place of business in Mount Prospect, Illinois.

6.      Counterclaimant Hartford is, and was at all relevant times, a Connecticut corporation with its principal place of business in Connecticut.

7.      Hartford is informed and believes and on that basis alleges that Plaintiff and Counterdefendant MDII is, and was at all relevant times, a corporation organized under the laws of Michigan, with its principal place of business in Warren, Michigan.

8.      Each of the Counter-Defendants was at all relevant times acting as the agent,

1  employee, principal, joint venturer, or partner of such other Defendants, and at all relevant times,

2  was acting within the course and scope of such relationship.

3                                **GENERAL ALLEGATIONS**

4       9.      Lapmaster sold a Precision Flat Lapping Machine and a Precision Flat Polishing

5  Machine ("the Machines") to Hayward Quartz Technology, Inc.

6       10.     The Machines were shipped from Japan by Hamai Co., Ltd. *See* Exhibit A.

7       11.     The Machines were transported by Ocean Vessel Cosco Hong Kong from the Port

8  of Yokohama, Japan pursuant to Waybill No. Y05F4451887 and other documents (collectively,

9  the "agreements"). A true and correct copy of Waybill No. Y05f4451887 is attached as Exhibit A

10  and is incorporated by reference.

11       12.     The Machines were transported from Japan to the Port of Oakland, California.

12       13.     At Oakland, California, Hartford is informed and believes and on that basis alleges

13  that ITG Transportation Services, Inc. ("ITG") and World Express Shipping, Transportation And

14  Forwarding Services, Inc. d/b/a W.E.S.T. Forwarding Services ("West") arranged for motor

15  transport of the Machines from Oakland to Fremont, California.

16       14.     The Waybill (Exhibit A) is not a through bill of lading and was not intended to

17  cover the ground transportation of the Machines. The Waybill did not identify MDII, made no

18  reference to a ground transportation carrier, and made no reference to the delivery of the Machines

19  from the Port of Oakland to Hayward Quartz in Fremont, California.

20       15.     On or about December 27, 2007, MDII picked up the Machines at the Port of

21  Oakland and began transporting the same to Fremont, California. *See* Import Dispatch, a true and

22  correct copy of which is attached as Exhibit B and incorporated by reference.

23       16.     On or about December 27, 2007, MDII negligently, carelessly and recklessly

24  operated and drove their tractor trailer truck so as to cause the tractor trailer truck and Machines,

25  as cargo, to collide with certain overpasses on Interstate 880 in California.

26       17.     The negligent, careless and reckless operation of the tractor trailer truck and

27  carriage of the cargo by MDII and its agents proximately caused damage to the Machines, and

28
                                            11
                        **HARTFORD'S ANSWER AND COUNTERCLAIMS**

1    other damages, losses and expenses.

2        18.    Hartford issued an insurance policy to its insured Lapmaster under policy number

3    83 UUQ RZ2879.

4        19.    As a result of the collision causing damage to the Machines, Lapmaster filed a

5    claim for loss under the policy with Hartford.

6        20.    The policy provided, in pertinent part, that in the event of an insured loss, Hartford

7    would be subrogated to any rights that Lapmaster might have against a third party who is

8    responsible for that loss to the extent of their payments. In addition to contractual subrogation

9    rights, Hartford has rights pursuant to equitable subrogation.

10       21.    As a result of the collision, and providing coverage under the policy, Hartford

11    incurred money damages when it compensated or reimbursed and as it is continuing to

12    compensate or reimburse its insured in amounts to be proven at trial, but in no event less than

13    $820,554.92, the exact amount to be proven at trial.

14       22.    In addition to the amounts paid out under the policy, Hartford seeks recovery of

15    prejudgment interest on the liquidated damages to the extent allowed pursuant to California law,

16    including California Civil Code §§ 3287 and 3288.

17                              **FIRST COUNTERCLAIM**

18                              **(Declaratory Relief)**

19       23.    Counterclaimant incorporates by reference each of its allegations in the paragraphs

20    above.

21       24.    An actual controversy has arisen and now exists between Counterclaimant and

22    MDII regarding their respective rights and duties under the agreements referred to above, and

23    specifically, as to MDII's responsibility for the damage to the Machines and other damages, losses

24    and expenses referred to above. Counterclaimant contends, and MDII denies, that Counterclaimant

25    is entitled to compensation from MDII for the damaged or destroyed Machines. Counterclaimant

26    further contends, and MDII denies, that MDII is liable under the agreements and the law of

27    indemnity and contribution, for the other damages, losses and expenses. Counterclaimant requests

28

1  the following specific relief:

2        (A)    A declaration that MDII is liable for all damage to the Machines;

3        (B)    That the Carriage of Goods by Sea Act ("COGSA") does not apply to the

4  ground transportation of the Machines from Port of Oakland to Fremont, California;

5        (C)    That the Waybill (Exhibit A) is not a "through bill of lading" because 1) it

6  did not contain a "Himalaya Clause" clearly identifying MDII as a covered party, and 2) the

7  Waybill identifies the Port of Oakland as the final destination, not Fremont, California where

8  MDII was transporting the Machines, thus evidencing that the Waybill was not intending to cover

9  the ground transportation or apply to MDII;

10        (D)    That MDII's liability is not limited to $500.00 per Machine because 1) the

11  COGSA does not apply, and 2) Lapmaster was not given a full and fair opportunity to avoid or

12  increase the $500.00 limitation;

13        (E)    That Counterclaimant is entitled under the agreements or applicable law to

14  recover attorneys' fees and costs incurred in defense of MDII's action and in prosecuting these

15  Counterclaims.

16    25.    Such a declaration is necessary and appropriate at this time, so that the parties may

17  ascertain their respective rights and duties with respect to the claims asserted by MDII and

18  Counterclaimant, and to avoid a multiplicity of actions.

19                    **SECOND COUNTERCLAIM**

20                      **(Implied Indemnity)**

21    26.    Counterclaimant incorporates by reference each of its allegations in the Paragraphs

22  above.

23    27.    Hartford is informed and believes and on that basis alleges that they are entitled to

24  implied indemnity, based on the agreements referred to above and principles of maritime and

25  federal common law. A right to indemnity for the damages, losses and expenses is implied, if not

26  expressed, in the terms of the agreements between the parties.

27

28

**THIRD COUNTERCLAIM**

**(Equitable Indemnity)**

28.     Hartford incorporates by reference each of its allegations in Paragraphs above.

29.     Hartford is entitled to equitable indemnity from MDII under California law, for damages to the Machines and all other damages, losses and expenses incurred by Counterclaimant in connection with the accident alleged above. Counterclaimant is entitled to such equitable indemnity by virtue of the relationship of the parties, in which MDII, as the motor carrier of the Machines from Oakland to Fremont, had control over the cargo and the instrumentalities of delivery, and MDII and its agents or subagents were negligent or otherwise at fault, proximately causing the Machines damage and other damages, losses and expenses alleged above.

**FOURTH COUNTERCLAIM**

**(Negligence)**

30.     Hartford incorporates by reference each of its allegations in Paragraphs above.

31.     MDII and its employees, agents and subagents had a duty to use reasonable care and take reasonable industry-wide precautions during its transport of the Machine.

32.     MDII and its agents and subagents were negligent in their transport of the Machines by failing to use reasonable care and take reasonable precautions such as measuring its load and causing the Machines to collide with certain highway overpasses.

33.     MDII's negligence proximately caused or contributed to the Machines being damaged and the other damages, losses and expenses alleged above.

34.     Hartford is therefore entitled to recover damages from MDII, as the carrier of the Machines from Oakland to Fremont.

35.     As a result of providing coverage under the policy, Hartford has incurred, and continues to incur the monetary damages alleged herein, but in no event less than $820,554.92, an exact amount to be proven at trial.

////

////

**FIFTH COUNTERCLAIM**

**(Negligence Per Se)**

36.    Counterclaimant alleges and incorporate by reference each and every allegation contained above as though fully set forth herein.

37.    On or about December 27, 2007, MDII owed a duty of care, as defined by federal, state and local statutes, rules, codes and regulations, including, but not limited to California Vehicle Code § 35250 (Maximum Vehicle or Load Height).

38.    MDII willfully or otherwise breached the duties of care defined by federal, state and local statutes, rules, codes and regulations, all of which were owed to the public and Lapmaster.

39.    Lapmaster is in a class sought to be protected by the applicable federal, state and local statutes, rules, codes and regulations, and the type of damages suffered by Counterclaimant are the type of harm sought to be prevented by the applicable federal, state and local statutes, rules, codes and regulations.

40.    As a direct and proximate result of MDII's conduct in breaching the duties set forth by the applicable federal, state and local statutes, rules, codes and regulations, Counterclaimant sustained damages in an amount to be proven at the time of trial, but in no event less than $820,554.92.

41.    As a result of the collision, and providing coverage under the policy, Hartford incurred money damages when it compensated or reimbursed and as it is continuing to compensate or reimburse its insured in amounts to be proven at trial, but in no event less than $820,554.92, the exact amount to be proven at trial.

**SIXTH COUNTERCLAIM**

**(Breach of Bailment Contract)**

42.    Counterclaimant realleges and reincorporates each and every allegation contained in paragraphs above.

43.    At all relevant times herein, Lapmaster owned and entrusted the Machines to MDII

**HARTFORD'S ANSWER AND COUNTERCLAIMS**

1   for purposes of transporting the Machines from the Port of Oakland to Fremont, California.

2       44.    On or about December 27, 2007, Lapmaster entrusted the Machines to MDII.

3       45.    MDII picked up the Machines at the Port of Oakland in excellent condition.

4       46.    A bailment contract was created with Lapmaster and MDII by virtue of Lapmaster

5   entrusting the Machines to MDII in exchange for payment. MDII accepted possession and custody

6   of the Machines.

7       47.    Under the law of bailments, and/or under the terms of the bailment, MDII impliedly

8   and/or expressly promised to deliver the Machines in the same condition as at the time of pickup.

9       48.    Hartford is informed and believes and thereon alleges that MDII, on or about

10  December 27, 2007, breached the agreement by, but not limited to, negligently, recklessly,

11  carelessly, wantonly entrusted and/or operated the tractor trailer truck so as to collide and strike an

12  overpass on the 880 Freeway near Oakland, California.

13      49.    On or about December 27, 2007, MDII, breached the bailment contract by, but not

14  limited to, failing to deliver the Machines in the same condition as picked up.

15      50.    Lapmaster duly performed all conditions, covenants and requirements on its part to

16  be performed in a timely manner or, alternatively, has been excused from such performance on

17  account of MDII's breach.

18      51.    As the owner of the Machines, Lapmaster was a beneficiary of the bailment terms,

19  promises, and/or obligations, and is entitled to enforce the bailment promise, whether implied or

20  written.

21      52.    As a result of MDII's breach of the bailment agreement, Lapmaster suffered loss

22  when the Machines suffered severe property damage and were eventually declared a total loss.

23      53.    As a direct and proximate result of the MDII's conduct in breaching the bailment

24  agreement, Lapmaster sustained damages in an amount to be proven at the time of trial, but in no

25  event less than $820,554.92.

26      54.    Pursuant to the terms and conditions of its policy of insurance with its insured,

27  Hartford has indemnified and paid, and is in the process of indemnifying and paying, Lapmaster

28

1  for such covered losses in an amount of $820,554.92, an exact amount to be proven at trial, and

2  thereby has become subrogated to the rights of its insured against these MDII.

## SEVENTH COUNTERCLAIM

### (Breach of Transportation Contract)

5      55.    Counterclaimant realleges and incorporates all paragraphs above.

6      56.    The matter complained of herein and the liability of MDII is predicated, *inter alia,*

7  upon the transportation of property by MDII under 49 U.S.C. §§ 13702 and 13706, and 49 U.S.C.

8  § 14706.

9      57.    On or about December 27, 2007, MDII entered into and accepted a contract for the

10  transport of the Machines from the Port of Oakland, California to Fremont, California. The only

11  documentation for the ground transportation between Oakland and Fremont is an "Import

12  Dispatch," a true and correct copy of which is attached hereto as Exhibit B, and incorporated by

13  reference.

14      58.    On or about December 27, 2007, MDII accepted the Machines for transport.

15      59.    On or about December 27, 2007, MDII drivers collided with certain overpasses on

16  Interstate 880 near Oakland, California.

17      60.    The transportation services rendered were for the benefit Lapmaster.

18      61.    Lapmaster was the actual and beneficial owner or legal possessor of the goods and

19  effects for which the transportation services were provided by MDII. In accordance with 49 U.S.C.

20  §§ 13702 and 13706 and 49 U.S.C. § 14706, MDII is obligated to pay for the damages it caused to

21  the Machines.

22      62.    Lapmaster has performed all the terms and conditions required.

23      63.    Despite the timely demand for reimbursement, MDII refused to pay for the

24  damaged Machines and instead initiated litigation against Lapmaster and Hartford seeking

25  declaratory relief under COGSA.

26      64.    MDII is liable pursuant to the terms of the agreement and 49 U.S.C. §§ 13706 and

27  13707, and 49 U.S.C. § 14706.

28

65. Pursuant to the terms and conditions of its policy of insurance with its insured, Hartford has indemnified and paid, and is in the process of indemnifying and paying, Lapmaster for such covered losses in an amount of $820,554.92, an exact amount to be proven at trial, and thereby has become subrogated to the rights of its insured against these MDII.

66. The unpaid amounts owed are liquidated amounts which became due on specified dates; thus, Counterclaimant is entitled to pre-judgment interest on all such obligations from the dates on which they became due through the date of judgment.

WHEREFORE, Counterclaimant prays for judgment against the Counterdefendant MDII as follows:

A. For the amount of damages resulting from the accident involving the Machines and paid to and/or on behalf of their insured under the policy in the amount of $820,554.92 and as proven at trial;

B. For costs and attorneys fees permitted by law;

C. For prejudgment interest as permitted by law, including, but not limited to, California Civil Codes §§ 3287 and 3288; and

D. For such other relief as this Court deems just and fair.

### DEMAND FOR JURY TRIAL ON COUNTERCLAIMS

Hartford hereby demands a jury trial on all Counterclaims for which jury trial is allowed by law.

DATED: April 16, 2008                    **BAUMAN LOEWE WITT & MAXWELL, PLLC**


By: /s/ Christopher J. Brennan
    Christopher J. Brennan
    *Attorneys for Hartford Fire Insurance Company*

# EXHIBIT A

# Nippon Express
d/b/a: Arrow International

**WAYBILL**    (COMBINED TRANSPORT DOCUMENT)

NON-NEGOTIABLE

RECEIVED the goods in the external or packages(s) said to contain the cargo herein mentioned in apparent good order and condition unless otherwise indicated, to be transported and delivered or transhipped as herein provided.
The receipt, custody, carriage, delivery and transhipping of the goods are subject to the terms and conditions on the face and back hereof, whether written, typed, stamped or printed.

Shipper
HAMAI CO., LTD
5-5-15,NISHI-GOTANDA,SHINAGAWA-KU
TOKYO,JAPAN

Waybill Number
YOSF4451887

Consignee
HAYWARD QUARTZ TECHNOLOGY,INC.
1700 CORPORATE WAY FREMONT,CA94539
TEL:510-657-9605

Export Reference

Forwarding Agent Reference
140083-4451887
YOSF 4451921     OTI LICENCE 016327N

Notify Party
LAPMASTER INTERNATIONAL
501 W.ALGONQUIN ROAD MOUNT PROSPECT
IL 60056 USA
224-659-7101 224-659-7103

Point and Country of Origin
JAPAN

For Cargo Release Contact:
NIPPON EXPRESS U.S.A. INC.
SAN FRANCISCO OCEAN CARGO BRANCH
250 UTAH AVENUE,SOUTH SAN FRANCISCO
O,CA 94080 U.S.A.
PHONE:(650)827-3100 FAX:(650)952-0380

Pre-carriage by

Place of Receipt
YOKOHAMA-CY

Ocean Vessel/Voy. No.   0450
COSCO HONG KONG

Port of Loading
YOKOHAMA, JAPAN

Routing of Transportation

Port of Discharge
OAKLAND,UNITED STATES

Place of Delivery
OAKLAND,CA,CY

Final Destination (for the Merchant's reference only)

| Marks and Numbers Container No. and Seal No. | No. of Pkgs. or Containers | Particulars Furnished by Shipper Description of Packages and Goods Type or Kind of Packages or Containers | Gross Weight | Measurement |
|---|---|---|---|---|
| H1M-7880-1 LAPMASTER 28BF-L OAKLAND CASE NO.1-4 MADE IN JAPAN | 4 CONTAINERS ======== 7 CASES | "SHIPPER'S LOAD & COUNT FOURWAYTYPE PRECISION FLAT LAPPING MACHINE FOURWAYTYPE PRECISION FLAT POLISHING MACHINE | 45,010.00 KGS | 115.371 M3 |
| H1M-7880-2 LAPMASTER 28BF-P OAKLAND CASE NO.1-3 MADE IN JAPAN | | | | |

( CONTAINER NO ) ( SEAL NO )

AS PER ATTACHED SHEET

FREIGHT COLLECT AS ARRANGED
SAY: FOUR (4) CONTAINERS ONLY.

846090081005C 846090010036, 846090010053 If Merchant enters a value, the Ad Valorem rate will be charged.
These commodities licensed by U.S.for ultimate destination     Diversion contrary to U.S.Law prohibited

| Freight & Charges | R/T | FREIGHT COLLECT AS ARRANGED | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Rate | Prepaid at | Payable at DESTINATION | Place of Waybill(s) issue YOKOHAMA, JAPAN | Dated Dec-1 2007 |
|---|---|---|---|---|
| 109.7100 | Total Prepaid in Yen | No. of original Waybill(s) ONE (1) | | |

IN WITNESS WHEREOF, the number of Waybill(s) stated herein, all of the same tenor and date, has been signed.

AS CARRIER, NIPPON EXPRESS U.S.A. (ILLINOIS), INC.
NIPPON EXPRESS CO., LTD.

Laden on board the Vessel

Vessel: COSCO HONG KONG     Date: Dec-1 2007

Port of Loading: YOKOHAMA, JAPAN     By:

By: YOKOHAMA INT'L TRANSPORT CO.

1. Unless otherwise set out on the face and back hereof, the Goods to be carried are subject to the terms and conditions provided for on the back of the Carrier's Bill of Lading and to the terms of Carrier's applicable tariff, both of which may be seen at the Carrier's office or at those of his authorized agents. Every reference therein to the words "Bill(s) of Lading" shall be read and construed as a reference to the words Non-Negotiable Waybill(s) and the terms and conditions thereof shall be read and construed accordingly, notwithstanding the Clause which requires a surrender of Bill(s) of Lading duly endorsed to the Carrier on delivery of the goods stated in NIPPON EXPRESS U.S.A. (ILLINOIS), INC. Combined Transport Bill of Lading.

In accepting this Waybill, the Shipper agrees to be bound by all stipulations, exceptions, terms and conditions on the face and back of this Waybill and the Carrier's Bill of Lading, whether written, typed, stamped or printed, as fully as if signed by the Shipper, any local custom or privilege to the contrary notwithstanding, and agrees that all agreement or freight engagement for and in connection with the carriage of the Goods are superseded by this Waybill.

2. Except as otherwise specifically provided in this Waybill, delivery of the Goods will be made only to the consignee named on the face hereof, or his authorized agents, on production of proof of identity. Notice of arrival of the goods will, in the absence of other instructions, be sent to the consignee or the person to be notified, by ordinary methods. The Carrier is not liable for non-receipt or delay in the dispatch of such notice.

3.     (1) Should the Shipper require delivery elsewhere than the place of delivery or the port of discharge as shown on the face hereof and should written instructions be given by the Shipper to the Carrier or his agents, the Carrier may, at his discretion, deliver the Goods at the place elsewhere than at the place of delivery or the port of discharge as shown on the face hereof.

    (2) Should the Consignee require delivery elsewhere than at the place of delivery or the port of discharge as shown on the face hereof and should written instructions given by the Consignee to the Carrier or his agents, the Carrier may, at his discretion, without any notice to the Shipper, deliver the Goods at the place elsewhere than the place of delivery or the port of discharge as shown on the face hereof.

    (3) Should delivery be required to be made to a party other than that named as the Consignee, authorization must be given in writing by the Shipper to the Carrier or his agents.

# EXHIBIT B

# ITG TRANSPORTATION SERVICES, INC.
### 1500 EISENHOWER LANE, SUITE 100
### LISLE, ILLINOIS 60532
### TELEPHONE 630-725-4650 FAX 630-725-4699
### AFTER 5:00P.M. AND WEEKENDS, PLEASE USE 24 HR EMERGENCY # 630-209-4649
PROFILE#:                    QUOTE #:

## IMPORT DISPATCH

DATE: 12/21/07                    ITG REF #: 8010284/85/86/88
BOOKING/BL#: COSU100083390
VENDOR NAME: MASON DIXON - Jose
VENDOR PH.: 510 - 433 - 1020   FX  510 - 433 - 1025

---

SSL: COSCO            EQUIP: 2X40' STANDARD  & 2 FLAT RACKS  (IN GUAGE)
TOFC/COFC/SPEQ: TOFC
HAZ(Y/N): N              DEC ATTACHED (Y/N): N

---

UNIT (INITIAL & NUMBER):  CBHU610576-2(40'STD) // CLHU373710-1 (20'STD) //
TRIU060411-1 ( 1X20' FLAT RACK) // TRIU063007-0 (1X20' FLAT RACK)
CHASSIS PICK UP:  SSA TERM & COSCO

---

ORIGIN:    SSA TERMINALS          RAIL PICKUP #: D/O ATTACHED
                                  LFD: 12/21/07

CONTACT:                          PHONE: 510-891-2922
        1717 MIDDLE HARBOR ROAD
        CNTR YARD - 510.238.4400
        OAKLAND            CA

APPOINTMENT DATE:  ** PLS PULL BOTH 1X20'STD & 1X40'STD TODAY 12/21 AND
DROP TODAY - ASAP //// PLS PULL BOTH FLAT RACKS ON WEDNESDAY 12/26 AND
DROP BY 1PM ****RIGGERS ARE HIRED FOR THE FLAT RACKS

DROP/LIVE (D/L): D

DEST:     HAYWARD QUARTZ TECHNOLOGY LOAD REF:
CONTACT: RCVNG               PHONE:  510-657-9605
         1700 CORPORATE WAY

         FREMONT            CA    94539

---

EMPTY CNTR RETURN: SSA TERM & COSCO       c/o SSL: COSCO
CHASSIS RETURN:  SSA TERM & COSCO

---

**DRIVER MUST BE ON TIME!! ANY DELAYS MUST BE REPORTED TO ITG IMMEDIATELY!!!!!!**
ITG WILL NOT BE RESPONSIBLE FOR ANY ACCESSORIALS NOT APPROVED AT TIME OF MOVE.
IF AFTER HOURS, PLEASE CALL THE 24 HOUR EMERGENCY NUMBER ABOVE.

DETENTION CHARGES REQUIRE SIGNED PROOF OF DELIVERY RECEIPT WITH IN/OUT TIMES.

CHASSIS SPLIT CHARGES MUST BE BILLED DIRECTLY TO THE ABOVE STEAMSHIP LINE.

**ANY DEVIATION FROM THIS WORK ORDER MUST BE AUTHORIZED BY ITG IN WRITING!**

SENT BY:  SHERRY X 4677

01/11/2008  12:24    5104331026                      MDII OAK                          PAGE  02

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009538-0**  ASA
Appt. time: __ASA__

**Oakland Terminal**   **Stockton Terminal**   **Fresno Terminal**
510-433-1020          209-941-0644           559-275-5400

**Railroad P/U #:**

SHIPPER:

CONSIGNEE/RECEIVER:   **Container Line: COSCO**

**HAYWARD QUARTZ TECHNOLOGY**

**1700 CORPORATE WAY**

**FREMONT**                           **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | | R/R |
|------|-------|-----------------|--|-----|
| **12/27/2007** | | **TRIU   0604111** | | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|--------------|----------------------------|--------|
| T/L | F.A.K. | |

**Appt #:**                          SPOT LOCATION

**Appt Conf. #:**         **Booking #**

**Directions:**
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2197. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies: the time and date of the trailer receipt; trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

SEAL INTACT # _____
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:30 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|--------------|------|---------|----------|-------------------------------------|------|
| | | | | | |

jguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

01/11/2008 12:24   5104331026              MDII OAK                          PAGE 03

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009539-8**  ASA
Appt. time: _____

**Oakland Terminal**   **Stockton Terminal**   **Fresno Terminal**
510-433-1020          209-941-0644           559-275-5400                   **Railroad P/U #:**

SHIPPER:                                      CONSIGNEE/RECEIVER:    **Container Line: COSCO**

                                             **HAYWARD QUARTZ TECHNOLOGY**

                                             **1700 CORPORATE WAY**

                                             **FREMONT**                **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|------|-------|-----------------|-----|
| **12/27/2007** | | **TRIU   0630070** | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|--------------|----------------------------|--------|
| T/L | F.A.K. | |

**Appt #:**                          SPOT LOCATION

**Appt Conf. #:**       Booking #

**Directions:**

880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

SEAL INTACT # _____
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guaranteed the pickup of an empty trailer on same day if not called in to dispatch before 3:00 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code 82187. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies: the time and date of the trailer receipt; trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|--------------|------|---------|----------|-------------------------------------|------|
| | | | | | |

iguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

1

## PROOF OF SERVICE

2

I, Cheryl L. Solomine, declare as follows:

3

4

I am employed with the law firm of Bauman Loewe, Witt & Maxwell, P.L.L.C., whose address is 8765 E. Bell Road, Suite 204, Scottsdale, AZ 85260. I am over the age of eighteen years, and am not a party to this action.

5

On April 16, 2008, I emailed the foregoing document described as follows:

6

7

8

**ANSWER OF DEFENDANT HARTFORD FIRE INSURANCE COMPANY ERRONEOUSLY SUED AS HARTFORD INSURANCE CO., TO MASON AND DIXON INTERMODAL, INC'S COMPLAINT FOR DECLARATIORY JUDGMENT; AND HARTFORD FIRE INSURANCE COMPANY'S COUNTERCLAIMS AGAINST MASON AND DIXON INTERMODAL, INC**

9

on the interested parties in this action by:

10

__X__  Service was made by email to the following:

11

12

13

14

Vincent Castillo
Lombardi, Loper & Conant, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2500
Oakland, CA  94612
vc@llcllp.com

15

16

17

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 16, 2008, at Scottsdale, Arizona.

18

19

_____
Cheryl L. Solomine

20

21

22

23

24

25

26

27

28

3

---

**HARTFORD'S THIRD-PARTY COMPLAINT**