Christopher J. Brennan, #220072
**BAUMAN LOEWE WITT & MAXWELL, PLLC**
8765 E. Bell Road, Suite 204
Scottsdale, AZ 85260
Telephone: (480) 502-4664
Facsimile: (480) 502-4774
cbrennan@blwlawfirm.com

*Attorneys for Defendant,*
*Counterclaimant and Third-Party Plaintiff,*
*Hartford Fire Insurance Co.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CAIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC.<br>Plaintiff,<br>v.<br>LAPMASTER INTERNATIONAL, LLC and HARTFORD INSURANCE CO.<br>Defendants. | Case No. CV-08-1232-MEJ<br><br>**HARTFORD FIRE INSURANCE COMPANY'S THIRD-PARTY COMPLAINT** |
| HARTFORD FIRE INSURANCE CO, individually and as subrogee of Lapmaster International, LLC,<br>Counterclaimant,<br>v.<br>MASON AND DIXON INTERMODAL, INC.<br>Counterclaimant. | |
| HARTFORD FIRE INSURANCE COMPANY, individually and as subrogee of Lapmaster International, LLC,<br>Third-Party Plaintiff,<br>v.<br>ITG TRANSPORTATION SERVICES, INC.; WORLD EXPRESS SHIPPING, TRANSPORTATION AND FORWARDING SERVICES, INC. d/b/a W.E.S.T. FORWARDING SERVICES; DOES I through X, inclusive:<br>Third-Party Defendants. | |

1

**HARTFORD'S THIRD-PARTY COMPLAINT**

Third-Party Plaintiff HARTFORD FIRE INSURANCE COMPANY ("Hartford" or "Third-Party Plaintiff"), individually and as subrogee of its insured, Lapmaster International, LLC, comes now for its Third-Party Complaint against Third-Party Defendants, and each of them, and alleges as follows

**JURISDICTION AND VENUE**

1. Hartford's Third-Party Complaint is based on Rule 14, 19, and 20 of the Federal Rules of Civil Procedure. This Court has jurisdiction over the claims for declaratory relief under 28 U.S.C. § 2201. This Court also has supplemental jurisdiction over Hartford's State law claims against ITG TRANSPORTATION SERVICES, INC. ("ITG") and WORLD EXPRESS SHIPPING, TRANSPORTATION AND FORWARDING SERVICES, INC. d/b/a W.E.S.T. FORWARDING SERVICES ("West Forwarding") because these claims result from a common nucleus of operative facts and relate to the federal claims alleged in the Complaint of Mason and Dixon Intermodal, Inc. ("MDII") and Counterclaims of Hartford.

2. Hartford is informed and believes and on that basis alleges that this Court also has jurisdiction based on diversity of citizenship, in that this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), in that the port of arrival of the cargo shipment was Oakland, California, within this Judicial District, and further, that the ground transportation of the Machines also occurred in this District.

4. As alleged above, the port of arrival and the interchange of equipment occurred in Oakland, California. This action is therefore properly assigned in the San Francisco or Oakland Division of this Court.

**PARTIES:**

5. Lapmaster International, LLC is, and was at all relevant times, an Illinois corporation with its principal place of business in Mount Prospect, Illinois.

2

**HARTFORD'S THIRD-PARTY COMPLAINT**

6. Hartford is, and was at all relevant times, a Connecticut corporation with its principal place of business in Connecticut.

7. Hartford is informed and believes and on that basis alleges that Plaintiff and Counterdefendant MDII is, and was at all relevant times, a corporation organized under the laws of Michigan, with its principal place of business in Warren, Michigan.

8. Hartford is informed and believes and on that basis alleges that Third-Party Defendant ITG is, and was at all relevant times, an Illinois corporation, with its principal place of business in Illinois.

9. Hartford is informed and believes and on that basis alleges that Third-Party Defendant West Forwarding is, and was at all relevant times, an Illinois corporation, with its principal place of business in Illinois.

10. The true names or capacities of Does I through X are presently unknown to Hartford, which therefore sues them by fictitious names. Hartford is informed and believes and on that basis alleges that each of the Doe Third-Party Defendants is responsible under federal law, federal or State common law, or in some other manner for the cargo damage and other damages, losses and expenses referred to in this Complaint. Hartford is further informed and believes and on that basis alleges that the conduct of each fictitiously named Third-Party Defendant proximately caused or contributed to such damages and losses. Hartford will amend its Third-Party Complaint to allege the true names and capacities of the Doe Defendants when ascertained.

11. Each of the Third-Party Defendants, including the Doe Defendants, was at all relevant times acting as the agent, employee, principal, joint venturer, or partner of such other Defendants, and at all relevant times, was acting within the course and scope of such relationship.

## GENERAL ALLEGATIONS

12. Lapmaster sold a Precision Flat Lapping Machine and a Precision Flat Polishing Machine ("the Machines") to Hayward Quartz Technology, Inc.

13. The Machines were shipped from Japan by Hamai Co., Ltd. *See* Exhibit A.

14. The Machines were transported by Ocean Vessel Cosco Hong Kong from the

3

HARTFORD'S THIRD-PARTY COMPLAINT

1  Port of Yokohama, Japan pursuant to Waybill No. Y05F4451887 and other documents (collectively, the "agreements"). A true and correct copy of Waybill No. Y05f4451887 is attached as Exhibit A and is incorporated by reference.

15. The Machines were transported from Japan to the Port of Oakland, California.

16. At Oakland, California, Hartford is informed and believes and on that basis alleges that ITG and West Forwarding arranged for motor transport of the Machines from Oakland to Fremont, California.

17. The Waybill (Exhibit A) is not a through bill of lading and was not intended to cover the ground transportation of the Machines. The Waybill did not identify MDII, made no reference to a ground transportation carrier, and made no reference to the delivery of the Machines from the Port of Oakland to Fremont, California.

18. On or about December 27, 2007, MDII picked up the Machines at the Port of Oakland and began transporting the same to Fremont, California. *See* Import Dispatch, a true and correct copy of which is attached as Exhibit B and incorporated by reference.

19. On or about December 27, 2007, MDII negligently, carelessly and recklessly operated and drove their tractor trailer truck so as to cause the tractor trailer truck and Machines, as cargo, to collide with certain overpasses on Interstate 880 in California.

20. The negligent, careless and reckless operation of the tractor trailer truck and carriage of the cargo by MDII and its agents proximately caused damage to the Machines, and other damages, losses and expenses.

21. Hartford issued an insurance policy to its insured Lapmaster under policy number 83 UUQ RZ2879.

22. As a result of the collision causing damage to the Machines, Lapmaster filed a claim for loss under the policy with Hartford.

23. The policy provided, in pertinent part, that in the event of an insured loss, Hartford would be subrogated to any rights that Lapmaster might have against a third party who is responsible for that loss to the extent of their payments. In addition to contractual

4

**HARTFORD'S THIRD-PARTY COMPLAINT**

1  subrogation rights, Hartford has rights pursuant to equitable subrogation.

2      24.    As a result of the collision, and providing coverage under the policy, Hartford incurred money damages when it compensated or reimbursed and as it is continuing to compensate or reimburse its insured in amounts to be proven at trial, but in no event less than $820,554.92, the exact amount to be proven at trial.

    25.    In addition to the amounts paid out under the policy, Hartford seeks recovery of prejudgment interest on the liquidated damages to the extent allowed pursuant to California law, including California Civil Code §§ 3287 and 3288.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

    26.    Hartford incorporates by reference each of its allegation in Paragraphs 1 through 25, above.

    27.    An actual controversy has arisen and now exists between Hartford and Third-Party Defendants ITG and West Forwarding regarding their respective rights and duties under the agreements referred to above for carriage of the Machines.

    28.    Hartford contends, and Third-Party Defendants deny, that Hartford is entitled to compensation from Third-Party Defendants under the agreements for all cargo damage or destroyed. Hartford further contends, and Third-Party Defendants deny, that Third-Party Defendants are liable under the written agreements, general maritime law, and the law of indemnity and contribution, for other damages, losses and expenses incurred by Hartford and its insured. Hartford requests the following specific relief:

    (A)    A declaration that Third-Party Defendants are liable for all damage to the Machines;

    (B)    That Third-Party Defendants are legally responsible for the other damages, losses and expenses incurred by Hartford and set forth above;

    (C)    That Third-Party Defendants are legally responsible for such cargo damage and other damages, losses and expenses under the written agreements;

5

**HARTFORD'S THIRD-PARTY COMPLAINT**

(D) That Third-Party Defendants are liable under general maritime and the law of indemnity and contribution for the cargo damage and other damages, losses and expenses referred to above; and

(E) That Hartford is entitled to recover attorneys' fees and costs from Third-Party Defendants incurred in Hartford's defense of MDII's action and in prosecuting the Third-Party action.

29. Such a declaration is necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties and avoid a multiplicity of actions.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

30. Hartford incorporates by reference each of its allegations in Paragraphs above.

31. Third-Party Defendants hired, retained, recommended and entrusted MDII to carefully, safely, and properly pickup the Machines from the Port of Oakland and deliver to Fremont, California.

32. MDII, and its drivers or employees, was hired and retained by Third-Party Defendants, and were at all relevant times the agents or subagents of Third-Party Defendants.

33. Third-Party Defendants, through their own conduct and/or the conduct of its agents or subagents, caused damage to the Machines, and in so doing, breached the agreements referred to above. Hartford is informed and believes and on that basis alleges that the contracts include commitments by Third-Party Defendants which were part of the contract of carriage and/or were intended to benefit Lapmaster.

34. Third-Party Defendants knew, or should have known, the value of the Machines.

35. Third-Party Defendants were required to, but failed to, hire, retained, recommend, and/or entrust the Machines to carriers and/or agents that were reputable, reliable, safe, knowledgeable, and whom would comply with generally accepted trucking standards and applicable laws and regulations.

36. Third-Party Defendants were required to, yet failed to, ensure that the motor

6

1  carrier it retained and/or recommended contained all the appropriate and necessary information
2  about the Machines and any specialized instructions regarding the cargo and its delivery.

3      37.    Third-Party Defendants were required to, yet failed to, ensure that its client,
4  Lapmaster, was properly protected in the event of damage to the Machines during their transport,
5  whether caused by its motor carrier or agent, to include but not limited to procure or bind
6  insurance coverage it quoted Lapmaster.

7      38.    Lapmaster performed all terms and conditions of the contracts required on its part.
8  Hartford is informed and believes and on that basis alleges that the damages and losses alleged
9  above were caused by MDII, as motor carrier and/or by Third-Party Defendants and its agents and
10 subagents.

11     39.    Third-Party Defendants' breach of the contracts, through its own conduct and/or
12 the conduct of its agents and subagents, has proximately caused damage to Lapmaster in the form
13 of damage to the Machines and other damages, losses and expenses, in an amount subject to proof
14 at trial.

15     40.    As a direct and proximate result of the Third-Party Defendants' conduct in
16 breaching the contracts, Lapmaster sustained damages in an amount to be proven at the time of
17 trial, but in no event less than $820,554.92.

18     41.    Pursuant to the terms and conditions of its policy of insurance with its insured,
19 Hartford has indemnified and paid, and is in the process of indemnifying and paying, Lapmaster
20 for such covered losses in an amount of $820,554.92, an exact amount to be proven at trial, and
21 thereby has become subrogated to the rights of its insured against Third-Party Defendants..

## THIRD CAUSE OF ACTION

### (Implied Indemnity)

24     42.    Third-Party Plaintiff incorporates by reference each of its allegations in the
25 Paragraphs above.

26     43.    Hartford is informed and believes and on that basis alleges that they are entitled to
27 implied indemnity, based on the agreements referred to above and principles of maritime and

federal common law. A right to indemnity for the damages, losses and expenses is implied, if not expressed, in the terms of the agreements between the parties.

### FOURTH CAUSE OF ACTION

#### (Negligence)

44. Third-Party Plaintiff incorporates by reference each of their allegations in Paragraphs above.

45. Third-Party Defendants hired, retained, recommended and entrusted MDII to carefully, safely, and properly pickup the Machines from the Port of Oakland and deliver to Fremont, California.

46. MDII, and its drivers or employees, were at all relevant times the agents or subagents of Third-Party Defendants.

47. Third-Party Defendants owed a duty to ensure that its carriers and agents are reputable, reliable, safe, knowledgeable, and comply with generally accepted trucking standards and applicable laws and regulations.

48. Third-Party Defendants further had a duty to ensure that the motor carrier it retained and/recommended contained all the appropriate and necessary information about the Machines and any specialized instructions regarding the cargo and its delivery.

49. Third-Party Defendants had a further duty to ensure that its client, Lapmaster, was properly protected in the event of damage to the Machines during their transport, whether caused by its motor carrier or agent.

50. Third-Party Defendants breached their duties by failing to retained, assign, recommend, or hire a reputable, reliable, safe, knowledgeable motor carrier who would comply with generally accepted trucking standards and applicable laws and regulations.

51. Third-Party Defendants breached their duties by failing to ensure that the motor carrier it retained and/recommended contained all the appropriate and necessary information about the Machines and any specialized instructions regarding the cargo and its delivery.

52. Third-Party Defendants breached their duties by failing to ensure that its client,

8

1  Lapmaster, was properly protected in the event of damage to the Machines during their transport, whether caused by its motor carrier or agent, and for failing to bind/procure appropriate insurance despite quoting Lapmaster for the same.

53. Third-Party Defendants' breach proximately caused the damages claimed and outlined above.

54. Pursuant to the terms and conditions of its policy of insurance with its insured, Hartford has indemnified and paid, and is in the process of indemnifying and paying, Lapmaster for such covered losses in an amount of $820,554.92, an exact amount to be proven at trial, and thereby has become subrogated to the rights of its insured against these Third-Party Defendants.

WHEREFORE Third-Party Plaintiff requests the following relief against Third-Party Defendants:

A. For the amount of damages resulting the accident involving the Machines and paid to and/or on behalf of their insured under the policy in the amount of $820,554.92 and as proven at trial;

B. For costs and attorneys fees permitted by law;

C. For prejudgment interest as permitted by law, including, but not limited to, California Civil Codes §§ 3287 and 3288; and

D. For such other relief as this Court deems just and fair

### DEMAND FOR JURY TRIAL ON THIRD-PARTY CLAIMS

Hartford hereby demands a jury trial on all Third-Party Claims for which jury trial is allowed by law.

DATED: April 16, 2008           **BAUMAN LOEWE WITT & MAXWELL, PLLC**

By: /s/ Christopher J. Brennan
    Christopher J. Brennan
    *Attorneys for Hartford Fire Insurance Company*

9

**HARTFORD'S THIRD-PARTY COMPLAINT**

# EXHIBIT A

# Nippon Express
d/b/a: Arrow International

**WAYBILL** (COMBINED TRANSPORT DOCUMENT)
NON-NEGOTIABLE

| Shipper | |
|---|---|
| HAMAI CO., LTD.<br>5-5-15, NISHI-GOTANDA, SHINAGAWA-KU<br>TOKYO, JAPAN | RECEIVED the goods or the container(s) said to contain the cargo herein mentioned in apparent good order and condition unless otherwise indicated, to be transported and delivered or transhipped as herein provided.<br>The receipt, custody, carriage, delivery and transhipping of the goods are subject to the terms and conditions on the face and back hereof, whether written, typed, stamped or printed. |
| | **Waybill Number**<br>YOSF4451887 |
| **Consignee**<br>HAYWARD QUARTZ TECHNOLOGY, INC.<br>1700 CORPORATE WAY FREMONT, CA94539<br>TEL:510-657-9605 | **Export Reference** |
| | **Forwarding Agent Reference**<br>140083-4451887<br>YOSF 4451921    OTI LICENCE 016327N |
| **Notify Party**<br>LAPMASTER INTERNATIONAL<br>501 W. ALGONQUIN ROAD MOUNT PROSPECT<br>IL 60056 USA<br>224-659-7101 224-659-7103 | **Point and Country of Origin**<br>JAPAN |
| | **For Cargo Release Contact**<br>NIPPON EXPRESS U.S.A. INC.<br>SAN FRANCISCO OCEAN CARGO BRANCH<br>250 UTAH AVENUE, SOUTH SAN FRANCISCO, CA 94080 U.S.A.<br>PHONE: (650) 827-3100 FAX: (650) 952-0380 |
| **Pre-carriage by** | **Place of Receipt**<br>YOKOHAMA, CY |
| **Ocean Vessel/Voy. No.**<br>COSCO HONG KONG / 045E | **Port of Loading**<br>YOKOHAMA, JAPAN | **Routing of Transportation** |
| **Port of Discharge**<br>OAKLAND, UNITED STATES | **Place of Delivery**<br>OAKLAND, CA, CY | **Final Destination (for the Merchant's reference only)** |

| Marks and Numbers<br>Container No. and Seal No. | No. of Pkgs or Containers | Description of Packages and Goods<br>Type or Kind of Packages or Containers | Gross Weight | Measurement |
|---|---|---|---|---|
| HIM-7880-1<br>LAPMASTER<br>28BF-L<br>OAKLAND<br>CASE NO. 1-4<br>MADE IN JAPAN<br><br>HIM-7880-2<br>LAPMASTER<br>28BF-P<br>OAKLAND<br>CASE NO. 1-3<br>MADE IN JAPAN<br><br>( CONTAINER NO ) ( SEAL NO )<br>AS PER ATTACHED SHEET<br><br>846090810054, 846090810055, 846090810053 | 4 CONTAINERS<br>7 CASES | "SHIPPER'S LOAD & COUNT"<br><br>FOURWAYTYPE PRECISION FLAT LAPPING MACHINE<br>FOURWAYTYPE PRECISION FLAT POLISHING MACHINE<br><br><br><br><br><br><br><br>FREIGHT COLLECT AS ARRANGED<br>SAY: FOUR (4) CONTAINERS ONLY.<br><br>If Merchant enters a value, the Ad Valorem rate will be charged. | 45,010.00 KGS | 115.371 M3 |

These commodities licensed by U.S. for ultimate destination        Diversion contrary to U.S. Law prohibited

| Freight & Charges | R/T | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | FREIGHT COLLECT AS ARRANGED | | | |

| Ex. Rate<br>¥109.7100 | Prepaid at | Payable at<br>DESTINATION | Place of Waybill(s) Issue<br>YOKOHAMA, JAPAN | Dated<br>Dec-1 2007 |
|---|---|---|---|---|
| | Total Prepaid in Yen | No. of original Waybill(s)<br>ONE (1) | IN WITNESS WHEREOF, the number of Waybill(s) stated herein, all of the same tenor and date, has been signed. | |

Laden on board the Vessel
Vessel: COSCO HONG KONG
Port of Loading: YOKOHAMA, JAPAN
Date: Dec-1 2007
By: [signature]

AS CARRIER, NIPPON EXPRESS U.S.A. (ILLINOIS), INC.
NIPPON EXPRESS CO., LTD.

By [signature]

1. Unless otherwise set out on the face and back hereof, the Goods to be carried are subject to the terms and conditions provided for on the back of the Carrier's Bill of Lading and to the terms of Carrier's applicable tariff, both of which may be seen at the Carrier's office or at those of his authorized agents. Every reference therein to the words "Bill(s) of Lading" shall be read and construed as a reference to the words Non-Negotiable Waybill(s) and the terms and conditions thereof shall be read and construed accordingly, notwithstanding the Clause which requires a surrender of Bill(s) of Lading duly endorsed to the Carrier on delivery of the goods stated in NIPPON EXPRESS U.S.A. (ILLINOIS), INC. Combined Transport Bill of Lading.

In accepting this Waybill, the Shipper agrees to be bound by all stipulations, exceptions, terms and conditions on the face and back of this Waybill and the Carrier's Bill of Lading, whether written, typed, stamped or printed, as fully as if signed by the Shipper, any local custom or privilege to the contrary notwithstanding, and agrees that all agreement or freight engagement for and in connection with the carriage of the Goods are superseded by this Waybill.

2. Except as otherwise specifically provided in this Waybill, delivery of the Goods will be made only to the consignee named on the face hereof, or his authorized agents, on production of proof of identity. Notice of arrival of the goods will, in the absence of other instructions, be sent to the consignee or the person to be notified, by ordinary methods. The Carrier is not liable for non-receipt or delay in the dispatch of such notice.

3.     (1) Should the Shipper require delivery elsewhere than the place of delivery or the port of discharge as shown on the face hereof and should written instructions be given by the Shipper to the Carrier or his agents, the Carrier may, at his discretion, deliver the Goods at the place elsewhere than at the place of delivery or the port of discharge as shown on the face hereof.

    (2) Should the Consignee require delivery elsewhere than at the place of delivery or the port of discharge as shown on the face hereof and should written instructions given by the Consignee to the Carrier or his agents, the Carrier may, at his discretion, without any notice to the Shipper, deliver the Goods at the place elsewhere than the place of delivery or the port of discharge as shown on the face hereof.

    (3) Should delivery be required to be made to a party other than that named as the Consignee, authorization must be given in writing by the Shipper to the Carrier or his agents.

# EXHIBIT B

**ITG TRANSPORTATION SERVICES, INC.**
1500 EISENHOWER LANE, SUITE 100
LISLE, ILLINOIS 60532
TELEPHONE 630-725-4650  FAX 630-725-4699
**AFTER 5:00P.M. AND WEEKENDS, PLEASE USE 24 HR EMERGENCY # 630-209-4649**

PROFILE#:                         QUOTE #:

## IMPORT DISPATCH

DATE: 12/21/07                    ITG REF #: 8010284/85/86/88
BOOKING/BL#: COSU100083390
VENDOR NAME: MASON DIXON - Jose
VENDOR PH: 510-433-1020   FX 510-433-1025

---

SSL: COSCO              EQUIP: 2X40' STANDARD & 2 FLAT RACKS   (IN GUAGE)
TOFC/COFC/SPEQ: TOFC
HAZ(Y/N): N             DEC ATTACHED (Y/N): N

UNIT (INITIAL & NUMBER):   CBHU610576-2 (40' STD) // CLHU373710-1 (20' STD) //
TRIU060411-1 ( 1X20' FLAT RACK) // TRIU063007-0 (1X20' FLAT RACK)
CHASSIS PICK UP:  SSA TERM % COSCO

---

ORIGIN:    SSA TERMINALS                 RAIL PICKUP #: D/O ATTACHED
                                         LFD: 12/21/07

CONTACT:                                 PHONE:  510-891-2922
           1717 MIDDLE HARBOR ROAD
           CNTR YARD - 510.238.4400
           OAKLAND                    CA

APPOINTMENT DATE:   ** PLS PULL BOTH 1X20' STD & 1X40' STD TODAY 12/21 AND
DROP TODAY - ASAP //// PLS PULL BOTH FLAT RACKS ON WEDNESDAY 12/26 AND
DROP BY 1PM ****RIGGERS ARE HIRED FOR THE FLAT RACKS

DROP/LIVE (D/L): D

DEST:      HAYWARD QUARTZ TECHNOLOGY  LOAD REF:
CONTACT:   RCVNG                      PHONE:  510-657-9605
           1700 CORPORATE WAY

           FREMONT                 CA     94539

---

EMPTY CNTR RETURN: SSA TERM % COSCO         c/o SSL: COSCO
CHASSIS RETURN:  SSA TERM % COSCO

---

**DRIVER MUST BE ON TIME!! ANY DELAYS MUST BE REPORTED TO ITG IMMEDIATELY!!!!!!**
ITG WILL NOT BE RESPONSIBLE FOR ANY ACCESSORIALS NOT APPROVED AT TIME OF MOVE.
IF AFTER HOURS, PLEASE CALL THE 24 HOUR EMERGENCY NUMBER ABOVE.

DETENTION CHARGES REQUIRE SIGNED PROOF OF DELIVERY RECEIPT WITH IN/OUT TIMES.

CHASSIS SPLIT CHARGES MUST BE BILLED DIRECTLY TO THE ABOVE STEAMSHIP LINE.

**ANY DEVIATION FROM THIS WORK ORDER MUST BE AUTHORIZED BY ITG IN WRITING!**

SENT BY:   SHERRY X 4677

01/11/2008  12:24   5104331026                MDII OAK                              PAGE  02

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009538-0**
Appt. time: **ASA**

Oakland Terminal   Stockton Terminal   Fresno Terminal
510-433-1020       209-941-0644        559-275-5400

Railroad P/U #:

SHIPPER:

CONSIGNEE/RECEIVER:    Container Line: **COSCO**

**HAYWARD QUARTZ TECHNOLOGY**
**1700 CORPORATE WAY**
**FREMONT**                **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|---|---|---|---|
| 12/27/2007 | | TRIU  0604111 | OAKLAND |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|---|---|---|
| T/L | F.A.K. | |

**Appt #:**                                    SPOT LOCATION

**Appt Conf. #:**         **Booking #**

**Directions:**
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<, CORPORATE WAY>

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2197. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies: the time and date of the trailer receipt; trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

SEAL INTACT # _____
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:30 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|---|---|---|---|---|---|
| | | | | | |

jguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"

**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

01/11/2008  12:24  5104331026                    MDII OAK                            PAGE  03

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009539-8**
Appt. time: **ASA**

Oakland Terminal   Stockton Terminal   Fresno Terminal
510-433-1020       209-941-0644        559-275-5400

Railroad P/U #:

SHIPPER:

CONSIGNEE/RECEIVER:   Container Line: **COSCO**

**HAYWARD QUARTZ TECHNOLOGY**
**1700 CORPORATE WAY**
**FREMONT**                    510-657-9605

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|---|---|---|---|
| 12/27/2007 | | TRIU  0630070 | OAKLAND |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|---|---|---|
| T/L | F.A.K. | |

**Appt #:**                                      SPOT LOCATION

**Appt Conf. #:**          Booking #

**Directions:**
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<, CORPORATE WAY>

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2197. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies the time and date of the trailer receipt, trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

SEAL INTACT #
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:00 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|---|---|---|---|---|---|
| | | | | | |

jguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

# PROOF OF SERVICE

I, Cheryl L. Solomine, declare as follows:

I am employed with the law firm of Bauman Loewe, Witt & Maxwell, P.L.L.C., whose address is 8765 E. Bell Road, Suite 204, Scottsdale, AZ 85260. I am over the age of eighteen years, and am not a party to this action.

On April 16, 2008, I emailed the foregoing document described as follows:

**HARTFORD FIRE INSURANCE COMPANY'S THIRD –PARTY COMPLAINT**

on the interested parties in this action by:

__X__   Service was made by email to the following:

Vincent Castillo
Lombardi, Loper & Conant, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2500
Oakland, CA 94612
vc@llcllp.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 16, 2008, at Scottsdale, Arizona.

_____
Cheryl L. Solomine

3

**HARTFORD'S THIRD-PARTY COMPLAINT**