1   JOHN F. HUGHES  (SBN 111638)
2   **GORDON & REES LLP**
    275 Battery Street, 20th Floor
3   San Francisco, CA 94111
    Telephone:  (415) 986.5900
4   Facsimile:   (415) 986.8054

5   Attorneys for Defendant and Counterclaimant
    LAPMASTER INTERNATIONAL LLC

6

7

8                   **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CAIFORNIA, SAN FRANCISCO DIVISION**

10  MASON AND DIXON                    Case No. CV-08-1232-MEJ
    INTERMODAL, INC.,
11                                     **ANSWER OF DEFENDANT**
                    Plaintiff,         **LAPMASTER INTERNATIONAL**
12                                     **LLC TO MASON AND DIXON**
        v.                             **INTERMODAL, INC.'S**
13                                     **COMPLAINT FOR**
    LAPMASTER INTERNATIONAL            **DECLARATORY JUDGMENT;**
14  LLC and HARTFORD INSURANCE         **AND LAPMASTER**
    CO.,                               **INTERNATIONAL LLC'S**
15                                     **COUNTERCLAIMS AGAINST**
                    Defendants.        **MASON AND DIXON**
16                                     **INTERMODAL, INC.**
    LAPMASTER INTERNATIONAL,
17  LLC,                               **DEMAND FOR JURY TRIAL**

                    Counter-Claimant,
18
        v.
19
    MASON AND DIXON
20  INTERMODAL, INC.,

                    Counter-Defendant
21

22      Defendant  LAPMASTER  INTERNATIONAL  LLC  ("Lapmaster"  or

23  "Defendant"), answers the Complaint of Mason and Dixon Intermodal, Inc.

24  ("MDII") and alleges Counterclaims as follows:

25                  **ANSWER TO "JURISDICTION AND VENUE"**

26      1.      Defendant denies each and every allegation in the Complaint that is not

27  expressly admitted herein.

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

                                      1
    **LAPMASTER INTERNATIONAL LLC ANSWER AND COUNTERCLAIMS**

2.    Answering Paragraph 1, Defendant admits the allegation in that Paragraph.

3.    Answering Paragraph 2, Defendant admits the allegation in that Paragraph.

4.    Answering Paragraph 3, Defendant admits the allegation in that Paragraph.

### ANSWER TO "PARTIES" ALLEGATIONS

5.    Answering Paragraph 4, Defendant lacks sufficient information or belief to admit or deny the allegations as to MDII, and on that ground, denies the allegations.

6.    Answering Paragraph 5, Defendant admits the allegations in that Paragraph.

7.    Answering Paragraph 6, Defendant admits the allegations in that Paragraph.

8.    Answering Paragraph 7, Defendant admits the allegations in that Paragraph.

9.    Answering Paragraph 8, Defendant admits the allegations in that Paragraph.

10.    Answering Paragraph 9, Defendant admits the allegations in that Paragraph.

11.    Answering Paragraph 10, Defendant denies the allegations insofar as the allegation is not accurate.  Hartford, after indemnifying its insured, Lapmaster International, LLC ("Lapmaster"), is subrogated to the rights of Lapmaster pursuant to the doctrines of contractual and equitable subrogation.  Lapmaster is seeking recovery of its own damages as set forth in its Counter-Claim.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## ANSWER TO "BACKGROUND ALLEGATIONS"

12.     Answering Paragraph 11, Defendant denies the allegations.    In December, 2007, the Machines were shipped by Hamai Co., Ltd. in Tokyo, Japan from the Yokohama, Japan port.    *See* Nippon Express Waybill ("Port of Loading"), a true and correct copy of which is attached as Exhibit A and incorporated by reference.    The place of delivery was Oakland, California.    *See* Exhibit A referencing "Port of Discharge" and "Place of Destination".

13.     Answering Paragraph 12, Defendant admits that Nippon Express issued the Waybill, but lack sufficient information or belief to admit or deny the remaining allegations, and on that ground, denies the allegations.

14.     Answering Paragraph 13, Defendant denies the allegations.    Nippon Express was not involved in arranging for the ground transportation in California.

15.     Answering Paragraph 14, Defendant denies the allegations.

16.     Answering Paragraph 15, Defendant denies the allegations.

17.     Answering Paragraph 16, Defendant lacks sufficient information or belief to admit or deny the allegations as to who prepared the Waybill, and on that ground, denies the allegations.

18.     Answering Paragraph 17, Defendant admits the allegations in that Paragraph inasmuch as MDII transported the Machines from the Port of Oakland. However, the transportation was never completed because MDII trucks negligently crashed into overpasses in Oakland, California.

## ANSWER TO "COUNT ONE"

19.     Answering Paragraph 18, Defendant incorporates by reference their answers to all Paragraphs above.

20.     Answering Paragraph 19, Defendant denies the allegations.

21.     Answering Paragraph 20, Defendant denies the allegations.

22.     Answering Paragraph 21, Defendant denies the allegations.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

23.  Answering Paragraph 22, Defendant admits that Plaintiff has requested a judicial determination of the rights and duties of the parties. Defendant denies the remaining allegations in Paragraph 22, and specifically denies that MDII's liability is limited to $500.00 for each Machine MDII permanently damaged.

### ANSWER TO "COUNT TWO"

24.  Answering Paragraph 23, Defendant incorporates by reference their answers to all Paragraphs above.

25.  Answering Paragraph 24, Defendant denies the allegations.  MDII knew or should have known of said dimensions.  Third-Party Defendants knew and communicated to MDII the dimensions of the Machines.

26.  Answering Paragraph 25, Defendant denies the allegations.  Third-Party Defendants knew and communicated to MDII the dimensions of the Machines. MDII, as a "motor carrier engaged in the performance of intermodal trucking services," knew or should have known the loads it was carrying exceeded the height of the overpasses.  Also, after the first truck crashed into an overpass, MDII should not have allowed the other truck carrying the other machines to take the same route. MDII actions/inactions were the direct cause of the impact between the Machines and the overpasses.

27.  Answering Paragraph 26, Defendant denies the allegations.  Third-Party Defendants knew and communicated to MDII the dimensions of the Machines. MDII, as a "motor carrier engaged in the performance of intermodal trucking services," knew or should have known the loads it was carrying exceeded the height of the overpasses.  Also, after the first truck crashed into an overpass, MDII should not have allowed the other truck carrying the other machines to take the same route.

28.  Answering Paragraph 27, Defendant denies the allegations.

29.  Answering Paragraph 28, Defendant denies the allegations, and specifically denies that they are responsible to indemnify and reimburse MDII for

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**LAPMASTER INTERNATIONAL LLC ANSWER AND COUNTERCLAIMS**

the physical harm, damage, and liability caused by MDII's transport of the Machines, and denies that MDII's liability for damage to each machine is limited to $500.00.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Contractual Liability)

Under the terms of the written agreements between Plaintiff and Defendants, Plaintiff is not entitled to a declaration of non-liability or to any defense and indemnity from Defendants. Instead, under the terms of the agreements, Defendants are entitled to recover from Plaintiff for cargo damage and other damages, losses, costs, and expenses arising out of the matters referred to in the Complaint.

### SECOND AFFIRMATIVE DEFENSE

#### (Failure to Safely Deliver Cargo)

Under the agreements, Plaintiff was required to use due diligence to provide safe transport and delivery of the cargo from Oakland, California to Fremont, California. Plaintiff failed to use such due diligence, failed to perform the terms and conditions of the agreements, failed to safely deliver the cargo, and damaged the cargo through its own conduct and/or the conduct of its agents or subagents, all in violation of requirements of the agreements and applicable laws.

### THIRD AFFIRMATIVE DEFENSE

#### (Limitation of Liability Not Applicable)

Plaintiff is not entitled to limitation of liability under the carriage of Goods by Sea Act, ("COGSA"), 46 U.S.C. §§ 1300, et seq., with regard to the damages claimed by Defendants.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

Defendant alleges that the Complaint in its entirety fails to state facts sufficient to constitute a cause of action as against these answering Defendants.

## FIFTH AFFIRMATIVE DEFENSE

### (Liability for Acts of Agents or Subagents)

Plaintiff is responsible in contract and tort for all damage to cargo and other damages, losses and expenses resulting from its conduct.

## SIXTH AFFIRMATIVE DEFENSE

### (Negligence of Principal or Agent)

Plaintiff, and/or its agents or subagents, failed to exercise due care in the transportation of the cargo, which proximately caused the damage to the cargo, and the other damages, losses and expenses referred to in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

### (Negligence or Fault of Third Parties)

The damage to cargo and other damages, losses and expenses referred to in the Complaint were proximately caused by, or contributed to, by the conduct of third parties for which Defendant is not responsible.

## EIGHTH AFFIRMATIVE DEFENSE

### (Carrier Burden as to Load and Stowage)

The cargo was received by Plaintiff from the shipper in apparent good order and condition. The cargo was damaged en route from Oakland to Fremont in two separate accidents. The cargo was damaged and destroyed. Defendants have therefore established a *prima facie* case of liability, and Plaintiff has the burden of proof to demonstrate any alleged defects in loading or stowage.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## NINTH AFFIRMATIVE DEFENSE

### (Proper Description of Cargo)

The Waybill and Import Dispatch properly identified the cargo and its measurements.   The cargo was properly marked. Plaintiff, and its agents or subagents, were therefore on notice at all times as to the nature of the cargo and the precautions required by the carrier.

## TENTH AFFIRMATIVE DEFENSE

### (Contributory or Comparative Fault of Carrier)

The cargo damage and the damages, losses and expenses referred to in the Complaint were proximately caused, wholly or in part, by the negligence or fault of MDII, and/or its agents or subagents.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

No acts, omissions or other conduct of Defendants, or of any other persons or parties attributable to Defendants, proximately caused or contributed to the cargo damage or other damages, losses and expenses referred to in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

### (Mitigation of Damages)

Defendants at all times acted properly to mitigate damages resulting from or incurred in connection with the accident(s) referred to in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

Plaintiff assumed the risk of the losses and damages resulting from the accident(s) referred to in the Complaint.

1  ## FOURTEENTH AFFIRMATIVE DEFENSE

2  ### (Improper Party and/or Absence of Indispensable Party)

3      Defendant alleges that ITG Transportation Services, Inc. and West

4  Forwarding Services are the proper party Defendants. In the event this allegation is

5  incorrect, and if affiliates or subsidiaries of Third-Party Defendants are the proper

6  parties, then there is, or may be, an improper party, absence of the real party in

7  interest, or absence of an indispensable party for assertion of Plaintiff's claims.

8  ## FIFTEENTH AFFIRMATIVE DEFENSE

9  ### (Waiver)

10      Defendant is informed and believes, and thereon alleges, that Plaintiff has

11  engaged in conduct that constitutes a waiver of rights under the contract alleged. By

12  reason of such waiver, Defendants are excused from further performance of the

13  obligations under the alleged contract.

14  ## SIXTEENTH AFFIRMATIVE DEFENSE

15  ### (Estoppel)

16      Defendant is informed and believes, and thereon alleges, that by reason of the

17  conduct of Plaintiff which constitutes a breach of contract, tortious conduct, waiver,

18  unclean hands and laches, Plaintiff is estopped to assert a right to relief against this

19  answering Defendant.

20  ## EIGHTEENTH AFFIRMATIVE DEFENSE

21  ### (Release)

22      Defendant is informed and believes, and thereon alleges, that the Plaintiff's

23  actions constitute a full release and waiver of any and all claims which may have

24  existed against this answering Defendant.

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## NINETEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

The Complaint is barred because the Plaintiff would be unjustly enriched if it prevailed on its Complaint.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Consideration)

Each of the causes of action contained in the Complaint is barred by failure of consideration.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Laches)

Defendant is informed and believes, and thereon alleges, that Plaintiff unreasonably delayed bringing suit against this Defendant, thereby prejudicing Defendants' rights. Therefore, all of the equitable causes of action of the Complaint are barred by the Doctrine of Laches.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

Defendant is informed and believes, and thereon alleges, that Plaintiff engaged in inequitable conduct, which conduct constitutes unclean hands, and by engaging in said conduct, Plaintiff is, therefore, barred from seeking equitable relief upon such causes of action contained in Plaintiff's Complaint.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Breach of Obstruction)

Defendant alleges that Plaintiff is barred from recovery against this Defendant because of its failure to fulfill its contractual obligations to this Defendant, which duties, promises, and contractual obligations it breached and anticipatorily repudiated, thereby excusing non-performances, if any, by the Defendants.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Breach)

Plaintiff is barred from any recovery because of its failure to fulfill its contractual obligations to this answering Defendant.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

### (Violation of Duty of Good Faith)

Defendant alleges that Plaintiff's actions have not been brought in good faith and are frivolous. Therefore, the Defendants are entitled to reasonable expenses and attorney's fees incurred in defending this suit.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Right to Amend)

Defendant hereby expressly reserves the right to supplement or amend these affirmative defenses predicated upon the discovery of additional issues or facts that may arises in the course of discovery in preparation for trial in this matter.

## RELIEF REQUESTED

THEREFORE, Defendant requests the following relief in its Answer:

A.     That the Court declare the respective rights and duties of the parties under the agreements and applicable law, but deny Plaintiff any affirmative relief and, instead, declare Defendant entitled to complete recovery for cargo damage and other damages, losses and expenses arising out of the accident referred to in the Complaint and Counterclaims;

B.     That the Court award Defendant attorneys' fees and costs to the extent allowed by the written agreements and applicable law;

C.     That the Court declare Defendant entitled to recover from Plaintiff under the written agreements and applicable law;

D.     For costs of suit; and

E.     For such other legal or equitable relief as the Court deems proper.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## COUNTERCLAIMS OF LAPMASTER INTERNATIONAL LLC

Defendant and Counterclaimant, Lapmaster International LLC ("Lapmaster") alleges the following Counterclaims against plaintiff and Counter-Defendant Mason and Dixon Intermodal, Inc. ("MDII"):

## JURISDICTION AND VENUE

1.    Jurisdiction of these Counterclaims is based on 28 U.S.C. §§ 1331 and 1333, in that the Counterclaims relate to cargo damage and present a federal question under federal common law and/or federal statutes. This Court also has jurisdiction over the claims for declaratory relief under 28 U.S.C. § 2201. This Court also has supplemental jurisdiction over Defendants' State law claims against MDII because these claims result from a common nucleus of operative facts and relate to the federal claims alleged in the Complaint and Counterclaims.

2.    Lapmaster is informed and believes and on that basis alleges that this Court also has jurisdiction of these Counterclaims based on diversity of citizenship, in that this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), in that the port of arrival of the cargo shipment was Oakland, California, within this Judicial District, and further, that the ground transportation of the Machines also occurred in this District.

4.    As alleged above, the port of arrival and the interchange of equipment occurred in Oakland, California. This action is therefore properly assigned in the San Francisco or Oakland Division of this Court.

## PARTIES

5.    Counter-Claimant Lapmaster, is, and was at all relevant times, an Illinois corporation with its principal place of business in Mount Prospect, Illinois.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    6.    Lapmaster is informed and believes and on that basis alleges that

2  Plaintiff and Counterdefendant MDII is, and was at all relevant times, a corporation

3  organized under the laws of Michigan, with its principal place of business in

4  Warren, Michigan.

5    7.    Each of the Counter-Defendants was at all relevant times acting as the

6  agent, employee, principal, joint venturer, or partner of such other Counter-

7  Defendants and Third-Party Defendants, and at all relevant times, was acting within

8  the course and scope of such relationship.

9                          **GENERAL ALLEGATIONS**

10    8.    Lapmaster sold a Precision Flat Lapping Machine and a Precision Flat

11  Polishing Machine ("the Machines") to Hayward Quartz Technology, Inc.

12    9.    The Machines were shipped from Japan by Hamai Co., Ltd.    *See*

13  Exhibit A.

14    10.    The Machines were transported by Ocean Vessel Cosco Hong Kong

15  from the Port of Yokohama, Japan pursuant to Waybill No. Y05F4451887 and other

16  documents (collectively, the "agreements"). A true and correct copy of Waybill No.

17  Y05f4451887 is attached as Exhibit A and is incorporated by reference.

18    11.    The Machines were transported from Japan to the Port of Oakland,

19  California.

20    12.    At Oakland, California, Lapmaster is informed and believes and on that

21  basis alleges that ITG Transportation Services, Inc. ("ITG") and/or World Express

22  Shipping, Transportation And Forwarding Services, Inc. d/b/a W.E.S.T. Forwarding

23  Services ("West") arranged for motor transport of the Machines from Oakland to

24  Fremont, California.

25    13.    The Waybill (Exhibit A) is not a through bill of lading and was not

26  intended to cover the ground transportation of the Machines. The Waybill did not

27  identify MDII, made no reference to a ground transportation carrier, and made no

28

**LAPMASTER INTERNATIONAL LLC ANSWER AND COUNTERCLAIMS**

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   reference to the delivery of the Machines from the Port of Oakland to Hayward

2   Quartz in Fremont, California.

3   14.   On or about December 26, 2007, MDII picked up the Machines at the

4   Port of Oakland and began transporting the same to Fremont, California. *See* Import

5   Dispatch, a true and correct copy of which is attached as Exhibit B and incorporated

6   by reference.

7   15.   On or about December 26 and 27, 2007, MDII negligently, carelessly

8   and recklessly operated and drove their tractor trailer trucks so as to cause the tractor

9   trailer truck and Machines, as cargo, to collide with certain overpasses on Interstate

10   880 in Oakland, California.

11   16.   The negligent, careless and reckless operation of the tractor trailer

12   trucks and carriage of the cargo by MDII and its agents proximately caused damage

13   to the Machines, and other damages, losses and expenses.

14   17.   Hartford issued an insurance policy to its insured Lapmaster under

15   policy number 83 UUQ RZ2879.

16   18.   As a result of the two separate collisions causing damage to the

17   Machines, Lapmaster filed a claim for loss under the policy with Hartford.

18   19.   The policy provided, in pertinent part, that in the event of an insured

19   loss, Hartford would be subrogated to any rights that Lapmaster might have against

20   a third party who is responsible for that loss to the extent of their payments.   In

21   addition to contractual subrogation rights, Hartford has rights pursuant to equitable

22   subrogation.

23   20.   Lapmaster was not, however, fully compensated under the Harford

24   policy for all claims, damages, losses, costs, expenses it incurred or suffered, or will

25   incur or suffer.

26   21.   In addition, the negligent and irresponsible actions of Counter-

27   Defendant has threatened Lapmaster's business relationship with Hayward Quartz,

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

13

1  and potentially other customers as well, which may result in the loss of business

2  opportunity, or loss of prospective economic benefits and relationships, all to

3  Lapmaster's detriment.    Therefore, Lapmaster seeks from Counter-Defendant all

4  damages and losses, both direct and' indirect, both past and prospective, which

5  Lapmaster has suffered or may suffer in the future, which have not been previously

6  paid by Hartford, and for which Counter-Defendant is responsible, in order to make

7  Lapmaster whole.

8     22.    In addition to the foregoing, Lapmaster seeks recovery of prejudgment

9  interest on liquidated damages to the extent allowed pursuant to California law,

10  including Civil Code § § 3287 and 3288.

11

12                    **FIRST COUNTERCLAIM**

13                      **(Declaratory Relief)**

14     23.    Counter-Claimant incorporates by reference each of its allegations in

15  the paragraphs above.

16     24.    An actual controversy has arisen and now exists between Counter-

17  Claimant and Counter-Defendant regarding their respective rights and duties under

18  the agreements referred to above, and specifically, as to Counter-Defendant's

19  responsibility for the damage to the Machines and other damages, losses and

20  expenses referred to above. Counter-Claimant contends, and Counter-Defendant

21  denies, that Counter-Claimant is entitled to compensation from Counter-Defendant

22  for the damaged or destroyed Machines. Counter-Claimant further contends, and

23  Counter-Defendant denies, that Counter-Defendant is liable under the agreements

24  and the law of indemnity and contribution, for the other damages, losses and

25  expenses. Counter-Claimant requests the following specific relief:

26        (A)    A declaration that Counter-Defendant is liable for all damage to

27  the Machines;

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

14

(B)   That the Carriage of Goods by Sea Act ("COGSA") does not apply to the ground transportation of the Machines from Port of Oakland to Fremont, California;

(C)   That the Waybill (Exhibit A) is not a "through bill of lading" because (1) it did not contain a "Himalaya Clause" clearly identifying MDII or Cross-Defendants as a covered party, and (2) the Waybill identifies the Port of Oakland as the final destination, not Fremont, California where Counter-Defendant was transporting the Machines, thus evidencing that the Waybill was not intending to cover the ground transportation or apply to Counter-Defendant;

(D)   That Counter-Defendant's liability is not limited to $500.00 per Machine because (1) the COGSA does not apply, and (2) Lapmaster was not given a full and fair opportunity to avoid or increase the $500.00 limitation;

(E)   That Counterclaimant is entitled under the agreements or applicable law to recover attorneys' fees and costs incurred in defense of Counter-Defendant's action and in prosecuting these Counter-Claims.

25.   Such a declaration is necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties with respect to the claims asserted by Counter-Defendant and Counter-Claimant, and to avoid a multiplicity of actions.

## SECOND COUNTERCLAIM

### (Implied Indemnity)

26.   Counter-Claimant incorporates by reference each of its allegations in the Paragraphs above.

27.   Lapmaster is informed and believes and on that basis alleges it is entitled to implied indemnity, based on the agreements referred to above and principles of maritime and federal common law. A right to indemnity for the damages, losses and expenses is implied, if not expressed, in the relationships and in

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

LAPMASTER INTERNATIONAL LLC ANSWER AND COUNTERCLAIMS

the terms of the agreements between the parties.

### THIRD COUNTERCLAIM

### (Equitable Indemnity)

28.    Lapmaster incorporates by reference each of its allegations in Paragraphs above.

29.    Lapmaster is entitled to equitable indemnity from Counter-Defendant under California law, for damages to the Machines and all other damages, losses and expenses incurred by Counter-Claimant in connection with the accident alleged above. Counter-Claimant is entitled to such equitable indemnity by virtue of the relationship of the parties, in which Counter-Defendant, as the motor carrier of the Machines from Oakland to Fremont, had control over (actual or construction) the cargo and the instrumentalities of delivery, and Counter-Defendant and its agents or subagents, were negligent or otherwise at fault, proximately causing the Machines damage and other damages, losses and expenses alleged above.

### FOURTH COUNTERCLAIM

### (Negligence)

30.    Lapmaster incorporates by reference each of its allegations in Paragraphs above.

31.    Counter-Defendant and its employees, agents and subagents, had a duty to use reasonable care and take reasonable industry-wide precautions in arranging for, and during, the transport of the Machine.

32.    Counter-Defendant and its agents and subagents, were negligent in their arranging and actual transport of the Machines by failing to use reasonable care and take reasonable precautions such as measuring its load, selecting and using the proper type of truck to carry the subject load, selecting the route for the subject trucks to take, causing the Machines to collide with certain highway overpasses, and

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   subsequently leaving these high precision, electronic, and expensive Machines in the
2   rain where they were further damaged.

3       33.    Counter-Defendant's negligence proximately caused or contributed to
4   the Machines being damaged and the other damages, losses and expenses alleged
5   above.

6       34.    Lapmaster is therefore entitled to recover damages from Counter-
7   Defendants, as the carrier of the Machines from Oakland to Fremont.

8       35.    As a result of the negligence of Counter-Defendant, Lapmaster has
9   incurred, and continues to incur the monetary damages alleged herein the exact
10  amount to be proven at trial.

11                          **FIFTH COUNTERCLAIM**
12                            **(Negligence Per Se)**

13      36.    Counter-Claimant alleges and incorporate by reference each and every
14  allegation contained above as though fully set forth herein.

15      37.    On or about December 27, 2007, Counter-Defendant owed a duty of
16  care, as defined by federal, state and local statutes, rules, codes and regulations,
17  including, but not limited to California Vehicle Code § 35250 (Maximum Vehicle or
18  Load Height).

19      38.    Counter-Defendant willfully or otherwise breached the duties of care
20  defined by federal, state and local statutes, rules, codes and regulations, all of which
21  were owed to the public and Lapmaster, and as evidenced by, among other things,
22  the fact that at least one of MDII's drivers was cited for transporting the load in
23  violation of law.

24      39.    Lapmaster is in a class sought to be protected by the applicable federal,
25  state and local statutes, rules, codes and regulations, and the type of damages
26  suffered by Counter-Claimant are the type of harm sought to be prevented by the
27  applicable federal, state and local statutes, rules, codes and regulations.

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

40.    As a direct and proximate result of Counter-Defendant's conduct in breaching the duties set forth by the applicable federal, state and local statutes, rules, codes and regulations, Counter-Claimant sustained damages as set forth herein in an amount to be proven at the time of trial.

## SIXTH COUNTERCLAIM

### (Breach of Bailment Contract)

41.    Counter-Claimant realleges and reincorporates each and every allegation contained in paragraphs above.

42.    At all relevant times herein, Lapmaster owned and entrusted the Machines to MDII or to those who hired MDII, Counter-Defendant for purposes of transporting the Machines from the Port of Oakland to Fremont, California.

43.    On or about December 27, 2007, Lapmaster expressly or impliedly entrusted the Machines to MDII, or to those who hired MDII.

44.    MDII picked up the Machines at the Port of Oakland in excellent condition.

45.    A bailment contract was created with Lapmaster on the one hand, and Counter-Defendant on the other hand, by virtue of being entrusted with the Machines for delivery to Counter-Defendant in exchange for payment.    Counter-Defendant accepted possession and custody of the Machines.

46.    Under the law of bailments, and/or under the terms of the bailment, Counter-Defendant impliedly and/or expressly promised to deliver the Machines in the same condition as at the time of pickup.

47.    Lapmaster is informed and believes and thereon alleges that Counter-Defendant, on or about December 27, 2007, breached the agreement by negligently, recklessly, carelessly, wantonly entrusting and/or operating the tractor trailer trucks so as to collide and strike one or more overpasses on the 880 Freeway in Oakland, California.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

18

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

48.     On or about December 27, 2007, Counter-Defendant, breached the bailment contract by failing to deliver the Machines in the same condition as when received.

49.     Lapmaster duly performed all conditions, covenants and requirements on its part to be performed in a timely manner or, alternatively, has been excused from such performance on account of Counter-Defendant's breach.

50.     As the owner of the Machines, Lapmaster was a beneficiary of the bailment terms, promises, and/or obligations, and is entitled to enforce the bailment promise, whether implied or written.

51.     As a result of Counter-Defendant's breach of the bailment agreement, Lapmaster suffered loss when the Machines suffered severe property damage and were eventually declared a total loss.

52.     As a direct and proximate result of the Counter-Defendant's conduct in breaching the bailment agreement, Lapmaster sustained damages as set forth herein in an amount to be proven at the time of trial.

## SEVENTH COUNTERCLAIM

### (Breach of Transportation Contract)

53.     Counterclaimant realleges and incorporates all paragraphs above.

54.     The matter complained of herein and the liability of Counter-Defendant is predicated, *inter alia*, upon the transportation of property or arranging of transportation by Counter-Defendant under 49 U.S.C. §§ 13702 and 13706, and 49 U.S.C. § 14706.

55.     On or about December 27, 2007, Counter-Defendant entered into and accepted a contract for the transport of the Machines from the Port of Oakland, California to Fremont, California. The only documentation for the ground transportation between Oakland and Fremont is an "Import Dispatch," a true and correct copy of which is attached hereto as Exhibit B, and incorporated by reference.

56.    On or about December 27, 2007, Counter-Defendant accepted the Machines for transport. The transportation services rendered were for the benefit of Lapmaster.

57.    On or about December 27, 2007, MDII drivers collided with certain overpasses on Interstate 880 in Oakland, California, damaging the machines beyond repair.

58.    Lapmaster was the actual and beneficial owner or legal possessor of the goods and effects for which the transportation services were provided by Counter-Defendant. In accordance with 49 U.S.C. §§ 13702 and 13706 and 49 U.S.C. § 14706, Counter-Defendant is obligated to pay for the damages caused to the Machines.

59.    Lapmaster has performed all the terms and conditions required.

60.    Despite the timely demand for reimbursement, Counter-Defendant refused to pay for the damaged Machines or for the losses (past and prospective) suffered or which may be suffered by Lapmaster, and instead MDII initiated litigation against Lapmaster and Hartford seeking declaratory relief under COGSA.

61.    Counter-Defendant is liable pursuant to the terms of the agreement and 49 U.S.C. §§ 13706 and 13707, and 49 U.S.C. § 14706.

62.    As a result of Counter-Defendant's breach of the transportation agreement, Lapmaster suffered loss when the Machines suffered severe property damage and were eventually declared a total loss.

63.    As a direct and proximate result of the Counter-Defendant's conduct in breaching the transportation agreement, Lapmaster sustained damages as set forth above in an amount to be proven at the time of trial.

64.    The unpaid amounts owed are liquidated amounts which became due on specified dates; thus, Counter-Claimant is entitled to pre-judgment interest on all such obligations from the dates on which they became due through the date of

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1 judgment.

## EIGHTH COUNTER CLAIM

### (Negligent Interference with Prospective Economic Advantage against All Cross-Defendants)

65.    Counter-Claimant incorporates by reference each of the allegations in the paragraphs above.

66.    Prior to and during all times relevant herein, Counter-Defendant was aware that Counter-Claimant had existing economic relations with third parties, including but not limited to its customer Hayward Quartz which had purchased the Machines that were being transported at the time they were damaged and destroyed as a result of the negligence of Counter-Defendant, and that Counter-Claimant also had increased reputation and goodwill in the relevant community.

67.    Counter-Defendants knew or should have known that their conduct, as alleged above, would interfere with and disrupt these relationships.

68.    As a proximate result of Counter-Defendants' conduct, Counter-Claimants' relationship with its customers, including but not limited to Hayward Quartz, has been, or is expected to be interfered with and/or disrupted, causing loss of reputation, goodwill, and other damages to Counter-Claimants.

WHEREFORE, Counter-Claimant prays for judgment against Counter-Defendant for all damages not previously compensated by Hartford, including both direct and indirect losses, costs, and expenses, as well as both past and prospective losses, costs, and expenses, as well as for declaratory relief, as follows:

A.    For Declaratory Relief that MDII is liable for all damage to the Machines; that COGSA does not apply to the ground transportation of the Machines in California; that the Way Bill was not intended to cover ground transportation in California; and that MDII's liability is not limited to $500.00 per Machine;

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

21

1    B.    For the amount of damages, resulting from the accident involving the

2    Machines, as proven at trial;

3    C.    For costs and attorneys fees permitted by law;

4    D.    For prejudgment interest as permitted by law, including, but not limited

5    to, California Civil Codes §§ 3287 and 3288; and

6    E.    For such other relief as this Court deems just and fair.

7

8    **DEMAND FOR JURY TRIAL ON COUNTERCLAIMS**

9    Lapmaster International LLC hereby demands a jury trial on all Counter-

10   Claims for which jury trial is allowed by law.

11

12   DATED:  April 22, 2008          **GORDON & REES LLP**

13

14   By: _____

15   JOHN F. HUGHES

16   Attorneys for Defendant and Counter-Claimant
     LAPMASTER INTERNATIONAL LLC

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**LAPMASTER INTERNATIONAL LLC ANSWER AND COUNTERCLAIMS**

# EXHIBIT A

# Nippon Express
d/b/a Arrow International

**WAYBILL**   (COMBINED TRANSPORT DOCUMENT)
NON-NEGOTIABLE

**Shipper:**
HAMAI CO., LTD.
5-5-15, NISHI-GOTANDA, SHINAGAWA-KU
TOKYO, JAPAN

RECEIVED the goods or the container(s) or package(s) said to contain the cargo herein mentioned in apparent good order and condition unless otherwise indicated, to be transported and delivered or transhipped as herein provided.
The receipt, custody, carriage, delivery and transhipping of the goods are subject to the terms and conditions on the face and back hereof, whether written, typed, stamped or printed.

**Waybill Number**
YOSF4451887

**Consignee**
HAYWARD QUARTZ TECHNOLOGY, INC.
1700 CORPORATE WAY FREMONT, CA94539
TEL:510-657-9605

**Export Reference**

**Forwarding Agent Reference**
140083-4451887
YOSF 4451921          OTI LICENCE 016327N

**Notify Party**
LAPMASTER INTERNATIONAL
501 W. ALGONQUIN ROAD MOUNT PROSPECT
IL 60056 USA
224-659-7101 224-659-7103

**Point and Country of Origin**
JAPAN

NIPPON EXPRESS U.S.A.
SAN FRANCISCO OCEAN CARGO BRANCH
250 UTAH AVENUE SOUTH SAN FRANCISCO, CA-94080 U.S.A.
PHONE: (650) 827-3100 FAX: (650) 952-0380

**Pre carriage by**

**Place of Receipt**
YOKOHAMA CY

**Ocean Vessel/Voy. No.**
COSCO HONG KONG

**Port of Loading**
YOKOHAMA, JAPAN

**Routing of Transportation**

**Port of Discharge**
OAKLAND, UNITED STATES

**Place of Delivery**
OAKLAND, CA, CY

**Final Destination (for the Merchant's reference only)**

| Marks and Numbers | No. of Pkgs. or Containers | Particulars furnished by Shipper<br>Description of Packages and Goods<br>Type or Kind of Packages or Containers | Gross Weight | Measurement |
|---|---|---|---|---|
| HIM-7880-1<br>LAPMASTER<br>28BF-L<br>OAKLAND<br>CASE NO. 1-4<br>MADE IN JAPAN | 4 CONTAINERS<br>7 CASES | SHIPPER'S LOAD & COUNT<br><br>FOURWAYTYPE PRECISION FLAT LAPPING MACHINE<br>FOURWAYTYPE PRECISION FLAT POLISHING MACHINE | 25,010.00 KGS | 115.371 M3 |
| HIM-7880-2<br>LAPMASTER<br>28BF-P<br>OAKLAND<br>CASE NO 1-3<br>MADE IN JAPAN | | | | |

( CONTAINER NO ) ( SEAL NO )
AS PER ATTACHED SHEET

FREIGHT COLLECT AS ARRANGED
SAY: FOUR (4) CONTAINERS ONLY.

846090810055 846090810055 846090810053 If Merchant enters a value, the Ad Valorem rate will be charged.
These commodities licensed by U.S. for ultimate destination.                    Diversion contrary to U.S. Law prohibited.

| Freight & Charges | R/T | | Prepaid | Collect |
|---|---|---|---|---|
| | | FREIGHT COLLECT AS ARRANGED | | |

| Ex. Rate: | Prepaid at | Payable at<br>DESTINATION | Place of Waybill(s) Issue<br>YOKOHAMA, JAPAN | Dated<br>Dec-1 2007 |
|---|---|---|---|---|
| 109.7100 | Total Prepaid in Yen | No. of original Waybill(s)<br>ONE (1) | IN WITNESS WHEREOF the number of Waybill(s) stated herein, all of the same tenor and date, has been signed. | |

AS CARRIER, NIPPON EXPRESS U.S.A. (ILLINOIS), INC.
NIPPON EXPRESS CO., LTD.

**Laden on board the Vessel**

**Vessel:** COSCO HONG KONG          **Date:** Dec-1 2007

**Port of Loading:** YOKOHAMA, JAPAN          **By:**

1.  Unless otherwise set out on the face and back hereof, the Goods to be carried are subject to the terms and conditions provided for on the back of the Carrier's Bill of Lading and to the terms of Carrier's applicable tariff, both of which may be seen at the Carrier's office or at those of his authorized agents.  Every reference therein to the words "Bill(s) of Lading" shall be read and construed as a reference to the words Non-Negotiable Waybill(s) and the terms and conditions thereof shall be read and construed accordingly, notwithstanding the Clause which requires a surrender of Bill(s) of Lading duly endorsed to the Carrier on delivery of the goods stated in NIPPON EXPRESS U.S.A. (ILLINOIS), INC. Combined Transport Bill of Lading.

In accepting this Waybill, the Shipper agrees to be bound by all stipulations, exceptions, terms and conditions on the face and back of this Waybill and the Carrier's Bill of Lading, whether written, typed, stamped or printed, as fully as if signed by the Shipper, any local custom or privilege to the contrary notwithstanding, and agrees that all agreement or freight engagement for and in connection with the carriage of the Goods are superseded by this Waybill.

2.  Except as otherwise specifically provided in this Waybill, delivery of the Goods will be made only to the consignee named on the face hereof, or his authorized agents, on production of proof of identity.  Notice of arrival of the goods will, in the absence of other instructions, be sent to the consignee or the person to be notified, by ordinary methods.  The Carrier is not liable for non-receipt or delay in the dispatch of such notice.

3.    (1)  Should the Shipper require delivery elsewhere than the place of delivery or the port of discharge as shown on the face hereof and should written instructions be given by the Shipper to the Carrier or his agents, the Carrier may, at his discretion, deliver the Goods at the place elsewhere than at the place of delivery or the port of discharge as shown on the face hereof.

(2)  Should the Consignee require delivery elsewhere than at the place of delivery or the port of discharge as shown on the face hereof and should written instructions given by the Consignee to the Carrier or his agents, the Carrier may, at his discretion, without any notice to the Shipper, deliver the Goods at the place elsewhere than the place of delivery or the port of discharge as shown on the face hereof.

(3)  Should delivery be required to be made to a party other than that named as the Consignee, authorization must be given in writing by the Shipper to the Carrier or his agents.

# EXHIBIT B

**ITG TRANSPORTATION SERVICES, INC.**
1500 EISENHOWER LANE, SUITE 100
LISLE, ILLINOIS 60532
TELEPHONE 630-725-4650 FAX 630-725-4699
<u>AFTER 5:00 P.M. AND WEEKENDS, PLEASE USE 24 HR EMERGENCY # 630-209-4649</u>
PROFILE#:                    QUOTE #:

## IMPORT DISPATCH

DATE: 12/21/07                    ITG REF #: 8010284/85/86/88
BOOKING/BL#: COSU100083390
VENDOR NAME: MASON DIXON - Jose
VENDOR PH: 510 - 433 -1020   FX  510 -433 -1025

---

SSL: COSCO                EQUIP: 2X40' STANDARD  & 2 FLAT RACKS   (IN GUAGE)
TOFC/COFC/SPEQ: TOFC
HAZ(Y/N): N                    DEC ATTACHED (Y/N): N

---

UNIT (INITIAL & NUMBER):  CBHU610576-2 (40' STD) // CLHU373710-1 (20' STD) //
TRIU060411-1 ( 1X20' FLAT RACK) // TRIU063007-0 (1X20' FLAT RACK)
CHASSIS PICK UP:  SSA TERM & COSCO

---

ORIGIN:   SSA TERMINALS

RAIL PICKUP #: D/O ATTACHED
LFD: 12/21/07

CONTACT:                      PHONE: 510-891-2922
            1717 MIDDLE HARBOR ROAD
            CNTR YARD - 510.238.4400
            OAKLAND          CA

APPOINTMENT DATE:  ** PLS PULL BOTH 1X20' STD & 1X40' STD TODAY 12/21 AND
DROP TODAY - ASAP //// PLS PULL BOTH FLAT RACKS ON WEDNESDAY 12/26 AND
DROP BY 1PM ****RIGGERS ARE HIRED FOR THE FLAT RACKS

DROP/LIVE (D/L): D

DEST:   HAYWARD QUARTZ TECHNOLOGY  LOAD REF:
CONTACT: RCVNG                PHONE:  510-657-9605
            1700 CORPORATE WAY

            FREMONT          CA     94539

---

EMPTY CNTR RETURN: SSA TERM & COSCO        c/o SSL: COSCO
CHASSIS RETURN:  SSA TERM & COSCO

---

**DRIVER MUST BE ON TIME!! ANY DELAYS MUST BE REPORTED TO ITG IMMEDIATELY!!!!!!**
ITG WILL NOT BE RESPONSIBLE FOR ANY ACCESSORIALS NOT APPROVED AT TIME OF MOVE.
IF AFTER HOURS, PLEASE CALL THE 24 HOUR EMERGENCY NUMBER ABOVE.

DETENTION CHARGES REQUIRE SIGNED PROOF OF DELIVERY RECEIPT WITH IN/OUT TIMES.

CHASSIS SPLIT CHARGES MUST BE BILLED DIRECTLY TO THE ABOVE STEAMSHIP LINE.

**ANY DEVIATION FROM THIS WORK ORDER MUST BE AUTHORIZED BY ITG IN WRITING!**

SENT BY:  SHERRY X 4677

01/11/2008  12:24    5104331026                MDII OAK                          PAGE  02

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009538-0**  **ASA**
Appt. time:

Oakland Terminal   Stockton Terminal   Fresno Terminal
510-433-1020       209-941-0644        559-275-5400

Railroad P/U #:

SHIPPER:

CONSIGNEE/RECEIVER:   Container Line: **COSCO**

**HAYWARD QUARTZ TECHNOLOGY**

**1700 CORPORATE WAY**

**FREMONT**               **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|------|-------|-----------------|-----|
| **12/27/2007** | | **TRIU  0604111** | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|--------------|----------------------------|--------|
| T/L | F.A.K. | |

Appt #:                          SPOT LOCATION

Appt Conf. #:           **Booking #**

Directions:
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance toll and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2107. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies: the time and date of the trailer receipt; trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §9651.5.

SEAL INTACT #
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:30 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|--------------|------|---------|----------|-------------------------------------|------|
| | | | | | |

jguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose."
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

01/11/2008  12:24  5104331026                MDII OAK                              PAGE  03

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009539-8**  **ASA**
Appt. time:

Oakland Terminal     Stockton Terminal     Fresno Terminal
510-433-1020         209-941-0644          559-275-5400

Railroad P/U #:

SHIPPER:

CONSIGNEE/RECEIVER:     Container Line: **COSCO**

**HAYWARD QUARTZ TECHNOLOGY**

**1700 CORPORATE WAY**

**FREMONT**                    **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | B/R |
|------|-------|-----------------|-----|
| **12/27/2007** | | **TRIU  0630070** | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|--------------|---------------------------|--------|
| T/L | F.A.K. | |

Appt #:                              SPOT LOCATION

Appt Conf. #:        Booking #

Directions:

880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

SEAL INTACT #
It is your obligation to notify dispatch when this trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:00 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for spillages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2167. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies the time and date of the trailer receipt, trailer and contents in good condition and seal intact, driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

| DELIVERED BY | DATE | TIME IN. | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|--------------|------|----------|----------|-------------------------------------|------|

jguajardo

"These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

Re:   *Mason and Dixon Intermodal, Inc. v. Lapmastere International, LLC*
United States District Court – Northern District No. CV 08 1232 MEJ

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On **April 23, 2008**, I served the within documents:

**ANSWER OF DEFENDANT LAPMASTER INTERNATIONAL LLC TO MASON & DIXON INTERMODAL, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT; AND LAPMASTER INTERNATIONAL LCC'S COUNTERCLAIMS AGAINST MASON & DIXON INTERMODAL, INC; DEMAND FOR JURY TRIAL**

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco , addressed as set forth below.

☒   by electronically serving the document(s) described above via United States District Court Electronic Case Filing website on the recipients designated on the electronic service list that is located on the Pacer website and as set forth below:

| Attorneys for Plaintiff | Attorneys for Plaintiff |
|---|---|
| Matthew S. Conant | Paul D. Keenan |
| Vincent Castillo | Jeffrey D. Cohen |
| Lombardi Loper & Conant LLP | Keenan Cohen & Howard PC |
| Lake Merritt Plaza | One Pitcairn Place |
| 1999 Harrison Street, Suite 2600 | 165 Township Line Road, Suite 2400 |
| Oakland, CA 94612 | Philadelphia, PA 19046 |
| Tele:  510.433.2600 | Tele:  215.609.1110 |
| Fax:  510.433.2699 | Fax:  215.609.1117 |

Attorneys for Hartford Fire Ins. Co.
Christopher J. Brennan
Bauman Loewe Witt & Maxwell, PLLC
8765 E. Bell Road, Suite 204
Scottsdale, Arizona 85260
Tele: 480.502.4664
Fax: 480.502.4774

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **April 23, 2008**, at San Francisco , California.

Samantha Oryall

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

HAIC/1050626/5616020v.1



JOHN F. HUGHES  (SBN 111638)
**GORDON & REES LLP**
275 Battery Street, 20th Floor
San Francisco, CA 94111
Telephone:  (415) 986.5900
Facsimile:   (415) 986.8054

Attorneys for Defendant and Counterclaimant
And Third-Party Plaintiff
LAPMASTER INTERNATIONAL LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CAIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC., | Case No. CV-08-1232-MEJ |
| Plaintiff, | |
| v. | **LAPMASTER INTERNATIONAL LLC's THIRD-PARTY COMPLAINT** |
| LAPMASTER INTERNATIONAL LLC and HARTFORD INSURANCE CO. | |
| Defendants. | |
| LAPMASTER INTERNATIONAL, LLC, | **DEMAND FOR JURY TRIAL** |
| Counterclaimant, | |
| v. | |
| MASON AND DIXON INTERMODAL, INC. | |
| Counterclaimant. | |
| HARTFORD FIRE INSURANCE COMPANY, individually and as subrogee of Lapmaster International, LLC., | |
| Third-Party Plaintiff, | |
| v. | |
| ITG TRANSPORTATION SERVICES, INC.; WORLD EXPRESS SHIPPING, TRANSPORTATION AND FORWARDING SERVICES, INC. d/b/a/ W.E.S.T. FORWARDING SERVICES; DOES 1 through X, inclusive, | |
| Third-Party Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

HAIC/1050626/5611761v.1

- 1 -

1    Third-Party Plaintiff LAPMASTER INTERNATIONAL LLC

2    ("LAPMASTER" or "Third-Party Plaintiff"), comes now for its Third-Party

3    Complaint against Third-Party Defendants, and each of them, and alleges as

4    follows

5                        **JURISDICTION AND VENUE**

6        1.    Lapmaster's Third-Party Complaint is based on Rule 14, 19, and 20 of

7    the Federal Rules of Civil Procedure. This Court has jurisdiction over the claims

8    for declaratory relief under 28 U.S.C. § 2201. This Court also has supplemental

9    jurisdiction over Lapmaster's State law claims against ITG TRANSPORTATION

10   SERVICES, INC. ("ITG") and WORLD EXPRESS SHIPPING,

11   TRANSPORTATION AND FORWARDING SERVICES, INC. d/b/a W.E.S.T.

12   FORWARDING SERVICES ("West Forwarding") because these claims result

13   from a common nucleus of operative facts and relate to the federal claims alleged

14   in the Complaint of Mason and Dixon Intermodal, Inc. ("MDII") and

15   Counterclaims of Lapmaster.

16       2.    Venue is proper in the Northern District of California pursuant to 28

17   U.S.C. § 1391(b), in that the port of arrival of the cargo shipment was Oakland,

18   California, within this Judicial District, and further, that the ground transportation

19   of the Machines, and damage to the Machines, also occurred in this District.

20       3.    As alleged above, the port of arrival and the interchange of equipment

21   occurred in Oakland, California. This action is therefore properly assigned in the

22   San Francisco or Oakland Division of this Court.

23                              **PARTIES:**

24       4.    Lapmaster International, LLC is, and was at all relevant times, an

25   Illinois corporation with its principal place of business in Mount Prospect, Illinois.

26       5.    Lapmaster is informed and believes and on that basis alleges that

27   Third-Party Defendant ITG's is, and was at all relevant times, an Illinois

28   corporation, with its principal place of business in Illinois.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

- 2 -
LAPMASTER INTERNATIONAL LLC's THIRD-PARTY COMPLAINT

6.    Lapmaster is informed and believes and on that basis alleges that Third-Party Defendant West Forwarding is, and was at all relevant times, an Ohio corporation, with its principal place of business in Ohio.

7.    The true names or capacities of Does I through X are presently unknown to Lapmaster, which therefore sues them by fictitious names. Lapmaster is informed and believes and on that basis alleges that each of the Doe Third-Party Defendants is responsible under federal law, federal or State common law, or in some other manner for the cargo damage and other damages, losses and expenses referred to in this Complaint. Lapmaster is further informed and believes and on that basis alleges that the conduct of each fictitiously named Third-Party Defendant proximately caused or contributed to such damages and losses. Lapmaster will amend its Third-Party Complaint to allege the true names and capacities of the Doe Defendants when ascertained.

8.    Each of the Third-Party Defendants, including the Doe Defendants, was at all relevant times acting as the agent, employee, principal, joint venturer, or partner of such other Third-Party Defendants, as well as Counter-Defendant, and at all relevant times, was acting within the course and scope of such relationship.

## GENERAL ALLEGATIONS

9.    Lapmaster sold a Precision Flat Lapping Machine and a Precision Flat Polishing Machine ("the Machines") to Hayward Quartz Technology, Inc.

10.    The Machines were shipped from Japan by Hamai Co., Ltd. See Exhibit A.

11.    The Machines were transported by Ocean Vessel Casco Hong Kong from the Port of Yokohama, Japan pursuant to Waybill No. Y05F4451887 and other documents (collectively, the "agreements"). A true and correct copy of Waybill No. Y05F4451887 is attached as Exhibit A and is incorporated by reference.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

- 3 -

1    12.    The Machines were transported from Japan to the Port of Oakland,

2    California.

3    13.    At Oakland, California, Lapmaster is informed and believes and on

4    that basis alleges that ITG and West Forwarding arranged for motor transport of

5    the Machines from Oakland to Fremont, California.

6    14.    The Waybill (Exhibit A) is not a through bill of lading and was not

7    intended to cover the ground transportation of the Machines. The Waybill did not

8    identify MDII, made no reference to a ground transportation carrier, and made no

9    reference to the delivery of the Machines from the Port of Oakland to Fremont,

10    California.

11    15.    On or about December 26, 2007, MDII picked up the Machines at the

12    Port of Oakland and began transporting the same to Fremont, California. See

13    Import Dispatch, a true and correct copy of which is attached as Exhibit B and

14    incorporated by reference.

15    16.    On or about December 26 and 27, 2007, MDII negligently, carelessly

16    and recklessly operated and drove their tractor trailer trucks so as to cause the

17    tractor trailer trucks and Machines, as cargo, to collide on two separate occasions

18    with certain overpasses on Interstate 880 in California.

19    17.    The negligent, careless and reckless operation of the tractor trailer

20    trucks and carriage of the cargo by MDII and its agents proximately caused

21    damage to the Machines, and other damages, losses and expenses.

22    18.    Hartford Fire Insurance Company issued an insurance policy to its

23    insured Lapmaster under policy number 83 UUQ RZ2879.

24    19.    As a result of the collision causing damage to the Machines,

25    Lapmaster filed a claim for loss under the policy with Hartford.

26    20.    However, not all of Lapmaster's losses, claims, costs, expenses or

27    damages (past and prospective) were covered or otherwise paid by Hartford, as a

28    result of which, Lapmaster has not yet been made while for the losses suffered or

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  to be incurred as a result of the negligent, careless, reckless conduct and breaches

2  by Third-Party Defendants, as well as Counter-Defendant.

3      21.    As a result of the collision, Lapmaster incurred unreimbursed costs,

4  losses, expenses and damages, both direct and indirect, past and prospective, in

5  amounts to be proven at trial.

6      22.    In addition to the amounts paid out under the policy, Lapmaster seeks

7  recovery of prejudgment interest on the liquidated damages to the extent allowed

8  pursuant to California law, including California Civil Code §§ 3287 and 3288.

9
                          **FIRST CAUSE OF ACTION**
10                             (Declaratory Relief)

11      23.    Lapmaster incorporates by reference each of its allegation in

12  Paragraphs 1 through 25, above.

13      24.    An actual controversy has arisen and now exists between Lapmaster

14  and Third-Party Defendants ITG and West Forwarding regarding their respective

15  rights and duties under the agreements referred to above for carriage of the

16  Machines.

17      25.    Lapmaster contends, and Third-Party Defendants deny, that

18  Lapmaster is entitled to compensation from Third-Party Defendants under the

19  agreements for all cargo damage or destroyed. Lapmaster further contends, and

20  Third-Party Defendants deny, that Third-Party Defendants are liable under the

21  written agreements, general maritime law, and the law of indemnity and

22  contribution, for other damages, losses and expenses incurred by Lapmaster and its

23  insured. Lapmaster requests the following specific relief:

24      (A)    A declaration that Third-Party Defendants are liable for all damage to

25  the Machines;

26      (B)    That Third-Party Defendants are legally responsible for the other

27  damages, losses and expenses incurred by Lapmaster as set forth herein;

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1      (C)    That Third-Party Defendants are legally responsible for such cargo

2  damage and other damages, losses and expenses under the written agreements;

3      (D)    That Third-Party Defendants are liable under general maritime and the

4  law of indemnity and contribution for the cargo damage and other damages, losses

5  and expenses referred to above; and

6      (E)    That Lapmaster is entitled to recover attorneys' fees and costs from

7  Third-Party Defendants incurred in Lapmaster's defense of MDII's action and in

8  prosecuting the Third-Party action.

9      26.    Such a declaration is necessary and appropriate at this time, so that the

10  parties may ascertain their respective rights and duties and avoid a multiplicity of

11  actions.

12

13  **SECOND CAUSE OF ACTION**
    (Breach of Contract)

14      27.    Lapmaster incorporates by reference each of its allegations in

15  Paragraphs above.

16      28.    Third-Party Defendants hired, retained, recommended and entrusted

17  MDII to carefully, safely, and properly pickup the Machines from the Port of

18  Oakland and deliver to Fremont, California.

19      29.    MDII, and its drivers or employees, was hired and retained by Third-

20  Party Defendants, and were at all relevant times the agents or subagents of Third-

21  Party Defendants.

22      30.    Third-Party Defendants, through their own conduct and/or the conduct

23  of its agents or subagents, caused damage to the Machines, and in so doing,

24  breached the agreements referred to above.  Lapmaster is informed and believes

25  and on that basis alleges that the contracts include commitments by Third-Party

26  Defendants which were part of the contract of carriage and/or were intended to

27  benefit Lapmaster.

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1        31.    Third-Party Defendants knew, or should have known, the value of the

2  Machines.

3        32.    Third-Party Defendants were required to, but failed to, hire, retained,

4  recommend, and/or entrust the Machines to carriers and/or agents that were

5  reputable, reliable, safe, knowledgeable, and whom would comply with generally

6  accepted trucking standards and applicable laws and regulations.

7        33.    Third-Party Defendants were required to, yet failed to, ensure that the

8  motor carrier it retained and/or recommended contained all the appropriate and

9  necessary information about the Machines and any specialized instructions

10  regarding the cargo and its delivery.

11        34.    Third-Party Defendants were required to, yet failed to, ensure that

12  Lapmaster was properly protected in the event of damage to the Machines during

13  their transport, whether caused by its motor carrier or agent, to include but not

14  limited to procure or bind insurance coverage it quoted Lapmaster.

15        35.    Lapmaster performed all terms and conditions of the contracts

16  required on its part.  Lapmaster is informed and believes and on that basis alleges

17  that the damages and losses alleged above were caused by MDII, as motor carrier

18  and/or by Third-Party Defendants and their agents and subagents.

19        36.    Third-Party Defendants' breach of the contracts, through its own

20  conduct and/or the conduct of its agents and subagents, has proximately caused

21  damage to Lapmaster in the form of damage to the Machines and other damages,

22  losses and expenses, past and prospective, in an amount subject to proof at trial.

23

### THIRD CAUSE OF ACTION
(Implied Indemnity)

24

25        37.    Third-Party Plaintiff incorporates by reference each of its allegations

26  in the Paragraphs above.

27        38.    Lapmaster is informed and believes and on that basis alleges that they

28  are entitled to implied indemnity, based on the agreements referred to above and

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

1  principles of maritime and federal common law.  A right to indemnity for the

2  damages, losses and expenses is implied, if not expressed, in the terms of the

3  agreements between the parties.

4

5  ### FOURTH CAUSE OF ACTION
   (Negligence)

6  39.    Third-Party Plaintiff incorporates by reference each of their

7  allegations in Paragraphs above.

8  40.    Third-Party Defendants hired, retained, recommended and entrusted

9  MDII to carefully, safely, and properly pickup the Machines from the Port of

10  Oakland and deliver to Fremont, California.

11  41.    MDII, and its drivers or employees, were at all relevant times the

12  agents or subagents of Third-Party Defendants.

13  42.    Third-Party Defendants owed a duty to ensure that its carriers and

14  agents are reputable, reliable, safe, knowledgeable, and comply with generally

15  accepted trucking standards and applicable laws and regulations.

16  43.    Third-Party Defendants further had a duty to ensure that the motor

17  carrier it retained and/recommended contained all the appropriate and necessary

18  information about the Machines and any specialized instructions regarding the

19  cargo and its delivery.

20  44.    Third-Party Defendants had a further duty to ensure that Lapmaster

21  was properly protected in the event of damage to the Machines during their

22  transport, whether caused by its motor carrier or agent.

23  45.    Third-Party Defendants breached their duties by failing to retained,

24  assign, recommend, or hire a reputable, reliable, safe, knowledgeable motor carrier

25  who would comply with generally accepted trucking standards and applicable laws

26  and regulations.

27  46.    Third-Party Defendants breached their duties by failing to ensure that

28  the motor carrier it retained and/recommended obtained and followed all the

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  appropriate and necessary information about the Machines and any specialized

2  instructions regarding the cargo and its delivery.

3      47.    Third-Party Defendants breached their duties by failing to ensure that

4  Lapmaster was properly protected in the event of damage to the Machines during

5  their transport, whether caused by its motor carrier or agent, and for failing to

6  bind/procure appropriate insurance despite quoting Lapmaster for the same.

7      48.    Third-Party Defendants breached their duties by allowing the second

8  truck to follow the same route as the first truck after it had crashed into the

9  overpass in Oakland, California, resulting in the same fate to the Machine being

10  transported by the second truck.

11      49.    Third-Party Defendants' breach proximately caused the damages

12  claimed and outlined herein in an amount to be proven at trial.

13              **FIFTH CAUSE OF ACTION**
           (Negligent Interference with Prospective Economic Advantage against
14                      All Third Party Defendants)

15      50.    Third-Party Plaintiff incorporates by reference each of their

16  allegations in Paragraphs above.

17      51.    Prior to and during all time relevant herein, Third-Party Defendant

18  was aware that Third-Party Plaintiff had existing economic relations with third

19  parties, including but not limited to its customer Hayward Quartz which had

20  purchased the Machines that were being transported at the time they were damaged

21  and destroyed as a result of the negligence of Third-Party Defendants, and that

22  Third-Party Plaintiff also had increased reputation and goodwill in the relevant

23  community.

24      52.    Third-Party Defendants knew or should have known that their

25  conduct, as alleged above, would interfere with and disrupt these relationships.

26      53.    As a proximate result of Third-Party Defendants' conduct, Third-

27  Party Plaintiff's relationship with its customers, including but not limited to

28  Hayward Quartz, has been, or is expected to be interfered with and/or disrupted,

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  causing loss of income, reputation, goodwill, and other damages to Third-Party

2  Plaintiff.

3      WHEREFORE Third-Party Plaintiff prays for judgment and relief as set

4  forth below:

5      A.    For a declaration that the Third-Party Defendants are liable,

6  contractually and otherwise, for all damage to the Machines and all damages

7  incurred or to be incurred by Lapmaster; and that the Third-Party Defendants are

8  liable for indemnity, contribution and attorney's fees.

9      B.    For the amount of damages resulting the accident involving the

10  Machines and not previously compensated by Hartford, and including both direct

11  and indirect, as well as past and prospective, losses, costs and expenses and as

12  proven at trial;

13      C.    For costs and attorneys fees permitted by law;

14      D.    For prejudgment interest as permitted by law, including, but not

15  limited to, California Civil Codes §§ 3287 and 3288; and

16      E.    For such other relief as this Court deems just and fair.

17          **DEMAND FOR JURY TRIAL ON THIRD-PARTY CLAIMS**

18      Lapmaster hereby demands a jury trial on all Third-Party Claims for which

19  jury trial is allowed by law.

20

21  DATED:  April 22, 2008        **GORDON & REES LLP**

22

23                    By

24                    JOHN F. HUGHES

25                    Attorneys for Defendant and
                      Counterclaimant and Third-Party Plaintiff
26                    LAPMASTER INTERNATIONAL LLC

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# EXHIBIT A



**Nippon Express**
d/b/a: Arrow International

WAYBILL    (COMBINED TRANSPORT DOCUMENT)
NON-NEGOTIABLE

Shipper
HAMAI CO., LTD.
5-5-15, NISHI-GOTANDA, SHINAGAWA-KU
TOKYO, JAPAN

Waybill Number
YOSF4451887

Consignee
HAYWARD QUARTZ TECHNOLOGY, INC.
1700 CORPORATE WAY FREMONT, CA94539
TEL:510-657-9605

Export Reference

Forwarding Agent-Reference
140083-4451887
YOSF 4451921          OTI LICENSE 016327N

Notify Party
LAPMASTER INTERNATIONAL
501 W. ALGONQUIN ROAD MOUNT PROSPECT
IL 60056 USA
224-659-7101 224-659-7103

Place and Country of Origin
JAPAN
NIPPON EXPRESS U.S.A., INC.
SAN FRANCISCO OCEAN CARGO BRANCH
250 UTAH AVENUE, SOUTH SAN FRANCISCO
0, CA 94080 U.S.A
PHONE: (650) 827-3100 FAX: (650) 952-0380

Pre-carriage by
YOKOHAMA

Place of Receipt
YOKOHAMA, JAPAN

Ocean Vessel/Voy. No.    0406
COSCO HONG KONG

Port of Loading
YOKOHAMA, JAPAN

Routing of Transportation

Port of Discharge
OAKLAND, UNITED STATES

Place of Delivery
OAKLAND, CA, CY

Final Destination (for the Merchant's reference only)

Particulars Furnished by Shipper

| Marks and Numbers Container No. and Seal No. | No. of Pkgs or Containers Type or Kind of Packages and Goods | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| HIM-7880-1<br>LAPMASTER<br>28BF-L<br>OAKLAND<br>CASE NO. 1-4<br>MADE IN JAPAN<br><br>HIM-7880-2<br>LAPMASTER<br>28BF-9<br>OAKLAND<br>CASE NO 1-3<br>MADE IN JAPAN | 4 CONTAINERS<br>7 CASES | 'SHIPPER'S LOAD & COUNT'<br><br>FOURWAYTYPE PRECISION FLAT LAPPING MACHINE<br>FOURWAYTYPE PRECISION FLAT POLISHING MACHINE | 45,010.00 KGS | 115.371 M3 |

( CONTAINER NO ) ( SEAL NO )

AS PER ATTACHED SHEET

FREIGHT COLLECT AS ARRANGED
SAY: FOUR (4) CONTAINERS ONLY.

846090081005, 846090010035, 846090010053 If Merchant enters a value, the Ad Valorem rate will be charged.
These commodities licensed by U.S. for ultimate destination    Diversion contrary to U.S. Law prohibited

| Freight & Charges | R/T | FREIGHT COLLECT AS ARRANGED Prepaid | | Collect |
|---|---|---|---|---|
| | | | | |

| Rate | Prepaid at | Payable at DESTINATION | Place of Waybill(s) Issue YOKOHAMA, JAPAN | Dated Dec-1 2007 |
|---|---|---|---|---|
| Y 109, 7100 | Total Prepaid in Yen | No. of original Waybill(s) ONE (1) | IN WITNESS WHEREOF the number of Waybill(s) stated herein, all of the same tenor and date, has been signed. | |

Laden on board the Vessel

Vessel COSCO HONG KONG    Date Dec-1 2007

Port of Loading YOKOHAMA, JAPAN    By:

AS CARRIER, NIPPON EXPRESS U.S.A. (ILLINOIS), INC.
NIPPON EXPRESS CO., LTD.

By YOKOHAMA, INTL. TRANSPORT BR.

1.  Unless otherwise set out on the face and back hereof, the Goods to be carried are subject to the terms and conditions provided for on the back of the Carrier's Bill of Lading and to the terms of Carrier's applicable tariff, both of which may be seen at the Carrier's office or at those of his authorized agents.  Every reference therein to the words "Bill(s) of Lading" shall be read and construed as a reference to the words Non-Negotiable Waybill(s) and the terms and conditions thereof shall be read and construed accordingly, notwithstanding the Clause which requires a surrender of Bill(s) of Lading duly endorsed to the Carrier on delivery of the goods stated in NIPPON EXPRESS U.S.A. (ILLINOIS), INC. Combined Transport Bill of Lading.

In accepting this Waybill, the Shipper agrees to be bound by all stipulations, exceptions, terms and conditions on the face and back of this Waybill and the Carrier's Bill of Lading, whether written, typed, stamped or printed, as fully as if signed by the Shipper, any local custom or privilege to the contrary notwithstanding, and agrees that all agreement or freight engagement for and in connection with the carriage of the Goods are superseded by this Waybill.

2.  Except as otherwise specifically provided in this Waybill, delivery of the Goods will be made only to the consignee named on the face hereof, or his authorized agents, on production of proof of identity.  Notice of arrival of the goods will, in the absence of other instructions, be sent to the consignee or the person to be notified, by ordinary methods.  The Carrier is not liable for non-receipt or delay in the dispatch of such notice.

3.      (1)  Should the Shipper require delivery elsewhere than the place of delivery or the port of discharge as shown on the face hereof and should written instructions be given by the Shipper to the Carrier or his agents, the Carrier may, at his discretion, deliver the Goods at the place elsewhere than at the place of delivery or the port of discharge as shown on the face hereof.

(2)  Should the Consignee require delivery elsewhere than at the place of delivery or the port of discharge as shown on the face hereof and should written instructions given by the Consignee to the Carrier or his agents, the Carrier may, at his discretion, without any notice to the Shipper, deliver the Goods at the place elsewhere than the place of delivery or the port of discharge as shown on the face hereof.

(3)  Should delivery be required to be made to a party other than that named as the Consignee, authorization must be given in writing by the Shipper to the Carrier or his agents.

# EXHIBIT B

**ITG TRANSPORTATION SERVICES, INC.**
1500 EISENHOWER LANE, SUITE 100
LISLE, ILLINOIS 60532
TELEPHONE 630-725-4650 FAX 630-725-4699
AFTER 5:00 P.M. AND WEEKENDS, PLEASE USE 24 HR EMERGENCY # 630-209-4649

PROFILE#:                    QUOTE #:

## IMPORT DISPATCH

DATE: 12/21/07                    ITG REF #: 8010284/85/86/88
BOOKING/BL#: COSU100083390
VENDOR NAME: MASON DIXON - Jose
VENDOR PH: 510-433-1020    FX 510-433-1025

---

SSL: COSCO            EQUIP: 2X40' STANDARD  & 2 FLAT RACKS  (IN GUAGE)
TOFC/COFC/SPEQ: TOFC
HAZ(Y/N): N                    DEC ATTACHED (Y/N): N

---

UNIT (INITIAL & NUMBER):  CBHU610576-2(40'STD) // CLHU373710-1 (20'STD) //
TRIU060411-1 ( 1X20' FLAT RACK) // TRIU063007-0 (1X20' FLAT RACK)
CHASSIS PICK UP: SSA TERM % COSCO

---

                              RAIL PICKUP #: D/O ATTACHED
ORIGIN:   SSA TERMINALS      LFD: 12/21/07

CONTACT:
          1717 MIDDLE HARBOR ROAD     PHONE:  510-891-2922
          CNTR YARD - 510.238.4400
          OAKLAND            CA

APPOINTMENT DATE:   ** PLS PULL BOTH 1X20' STD & 1X40' STD TODAY 12/21 AND
DROP TODAY - ASAP //// PLS PULL BOTH FLAT RACKS ON WEDNESDAY 12/26 AND
DROP BY 1PM ****RIGGERS ARE HIRED FOR THE FLAT RACKS

DROP/LIVE (D/L): D

DEST:     HAYWARD QUARTZ TECHNOLOGY  LOAD REF:
CONTACT:  RCVNG                      PHONE:  510-657-9605
          1700 CORPORATE WAY

          FREMONT            CA    94539

---

EMPTY CNTR RETURN: SSA TERM % COSCO          c/o SSL: COSCO
CHASSIS RETURN:  SSA TERM % COSCO

---

**DRIVER MUST BE ON TIME!! ANY DELAYS MUST BE REPORTED TO ITG IMMEDIATELY!!!!!!**
ITG WILL NOT BE RESPONSIBLE FOR ANY ACCESSORIALS NOT APPROVED AT TIME OF MOVE.
IF AFTER HOURS, PLEASE CALL THE 24 HOUR EMERGENCY NUMBER ABOVE.

DETENTION CHARGES REQUIRE SIGNED PROOF OF DELIVERY RECEIPT WITH IN/OUT TIMES.

CHASSIS SPLIT CHARGES MUST BE BILLED DIRECTLY TO THE ABOVE STEAMSHIP LINE.

**ANY DEVIATION FROM THIS WORK ORDER MUST BE AUTHORIZED BY ITG IN WRITING!**

SENT BY:   SHERRY X 4677

01/11/2008  12:24  5104331026                    MDII OAK                        PAGE  02

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009538-0**  **ASA**
Appt. time:

Oakland Terminal   Stockton Terminal   Fresno Terminal
510-433-1020       209-941-0644        559-275-5400

Railroad P/U #:

SHIPPER:

CONSIGNEE/RECEIVER:   Container Line: **COSCO**

**HAYWARD QUARTZ TECHNOLOGY**

**1700 CORPORATE WAY**

**FREMONT**                    **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|------|-------|-----------------|-----|
| **12/27/2007** | | **TRIU  0604111** | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|---|---|---|
| T/L | F.A.K. | |

Appt #:                        SPOT LOCATION

Appt Conf. #:        Booking #

**Directions:**
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

SEAL INTACT #
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:30 p.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance call and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code 52197. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies the time and date of the trailer receipt; trailer and consents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay billed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code 59051.5.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|---|---|---|---|---|---|

Iguajardo

These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose"
**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

01/11/2008  12:24    5104331026                    MDII OAK                              PAGE  03

# MASON DIXON INTERMODAL, INC.

Inv #: **9470-009539-8**   Appt. time: **ASA**

**Oakland Terminal**    **Stockton Terminal**    **Fresno Terminal**
510-433-1020            209-941-0644             559-275-5400              Railroad P/U #:

SHIPPER:                                          CONSIGNEE/RECEIVER:    Container Line: **COSCO**

_____               **HAYWARD QUARTZ TECHNOLOGY**

_____               **1700 CORPORATE WAY**

_____               · **FREMONT**          **510-657-9605**

| DATE | P.O.# | CONTR./TRAILER# | R/R |
|------|-------|-----------------|-----|
| **12/27/2007** | | **TRIU  0630070** | **OAKLAND** |

| NO. OF PKGS. | DESCRIPTION OF COMMODITIES | WEIGHT |
|--------------|----------------------------|--------|
| T/L | F.A.K. | |

Appt #:                          SPOT LOCATION

Appt Conf. #:          **Booking #**

**Directions:**
880S, EXIT MISSION BLVD<, WARM SPRINGS BLVD<,
CORPORATE WAY>

NOTICE: This is a use controlled trailer with limited "free time." You must accept delivery within 48 hours and release back to us within 48 hours if you are to avoid additional charges. Truckers are required to advance rail and steamship charges on your behalf and are permitted to recover these charges from you pursuant to Civil Code §2107. You may request our dispatch operations to have the driver stay with the load and will have to pay for any time in excess of two hours. If you request that our driver unload, you have no free time and will be billed for his services from the time of arrival until departure. Signature of your company representative on this receipt verifies the time and date of the trailer receipt, trailer and contents in good condition and seal intact; driver's time of arrival and departure, and acknowledges liability for all trucking and associated charges. Failure to pay listed charges will result in a lien on shipments including the costs of storage and appropriate security pursuant to Civil Code §3051.5.

SEAL INTACT # _____
It is your obligation to notify dispatch when the trailer is available for pickup. MDII will not guarantee the pickup of an empty trailer on same day if not called in to dispatch before 2:30 a.m. This trailer is hauled by an independent contractor/owner operator. The contractor is not an employee of MDII. MDII is not responsible for damages, losses, etc. that may occur on your property. Acceptance of this "Delivery Receipt" is your acknowledgment to hold harmless MDII for any damages, losses, etc., that may occur from the delivery or pickup of this trailer or container.

| DELIVERED BY | DATE | TIME IN | TIME OUT | RECEIVED IN GOOD ORDER BY CONSIGNEE | DATE |
|--------------|------|---------|----------|-------------------------------------|------|

jguajardo

*These charges include (1) fees to pay for regulation of transportation companies by the California Public Utilities Commission and (2) taxes paid to California cities instead of excise or business license taxes they could otherwise impose*

**I.C.C. AND P.U.C. REQUIRE PAYMENT OF FREIGHT CHARGES WITHIN SEVEN DAYS.**

Re:    *Mason and Dixon Intermodal, Inc. v. Lapmastere International, LLC*
United States District Court – Northern District No. CV 08 1232 MEJ

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On **April 23, 2008**, I served the within documents:

### LAPMASTER INTERNATIONAL LLC'S THIRD-PARTY COMPLAINT; DEMAND FOR JURY TRIAL

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco , addressed as set forth below.

☒    by electronically serving the document(s) described above via United States District Court Electronic Case Filing website on the recipients designated on the electronic service list that is located on the Pacer website and as set forth below:

Attorneys for Plaintiff
Matthew S. Conant
Vincent Castillo
Lombardi Loper & Conant LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612
Tele: 510.433.2600
Fax:  510.433.2699

Attorneys for Plaintiff
Paul D. Keenan
Jeffrey D. Cohen
Keenan Cohen & Howard PC
One Pitcairn Place
165 Township Line Road, Suite 2400
Philadelphia, PA 19046
Tele:  215.609.1110
Fax:  215.609.1117

Attorneys for Hartford Fire Ins. Co.
Christopher J. Brennan
Bauman Loewe Witt & Maxwell, PLLC
8765 E. Bell Road, Suite 204
Scottsdale, Arizona 85260
Tele: 480.502.4664
Fax: 480.502.4774

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **April 23, 2008**, at San Francisco , California.

Samantha Oryall