Elise Shibles, Esq.
**SANDLER, TRAVIS & ROSENBERG
AND GLAD & FERGUSON, P.C.**
505 Sansome Street, Suite 1475
San Francisco, CA  94111
Telephone: (415) 986-1088
Facsimile:  (415) 986-2271
*Attorneys for W.E.S.T. Forwarding Services*

Edward M. Joffe, *Of Counsel\**
Florida Bar No. 314242
**SANDLER, TRAVIS & ROSENBERG, P.A.**
The Waterford - Suite 600
5200 Blue Lagoon Drive
Miami, Florida 33126
Tel.     (305) 267-9200
Fax     (305) 267-5155
Email:  ejoffe@strtrade.com

* Not admitted in California; pro hac vice application submitted 06/06/08

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

W.E.S.T. Forwarding Services Answer and Affirmative Defenses to Hartford Fire Insurance Co Third Party Complaint

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC., ) <br>       Plaintiff, ) <br>       v. ) <br> LAPMASTER INTERNATIONAL, LLC AND ) <br> HARTFORD INSURANCE CO. ) <br>       Defendants. ) <br> LAPMASTER INTERNATIONAL, LLC ) <br>       Counterclaimant, ) <br>       v. ) <br> MASON AND DIXON INTERMODAL, INC., ) <br>       Counterclaimant. ) <br><br> ) <br> HARTFORD FIRE INSURANCE COMPANY, ) <br> individually and as subrogee of Lapmaster ) <br> International LLC., ) <br>       Third-Party Plaintiff, ) <br>       v. ) <br> ITG TRANSPORTATION SERVICES, INC.; ) <br> WORLD EXPRESS SHIPPING, ) <br> TRANSPORTATION AND FORWARDING ) <br> SERVICES, INC. d/b/a/ W.E.S.T. FORWARDING ) <br> SERVICES; DOES 1 through X, inclusive ) <br>       Third-Party Defendants. ) <br><br> ) <br> AND RELATED CROSS-ACTION ) | Case No. CV-08-1232-VRW <br><br> **W.E.S.T. FORWARDING SERVICES ANSWER AND AFFIRMATIVE DEFENSES TO HARTFORD FIRE INSURANCE CO. THIRD PARTY COMPLAINT** |

Third-Party Defendant, W.E.S.T. Forwarding Services, Inc. ("W.E.S.T."), by and through

its undersigned counsel, hereby files its Answer and Affirmative Defenses to Hartford Fire

Insurance Company's ("Hartford") Third-Party Complaint and says:

## JURISDICTION AND VENUE

1.    W.E.S.T. denies the allegations set forth in paragraph 1 of the Third-Party Complaint.

2.    W.E.S.T. denies the allegations set forth in paragraph 2 of the Third-Party Complaint.

3.    W.E.S.T. denies the allegations set forth in paragraph 3 of the Third-Party Complaint.

4.    Numerical paragraph 4 of the Third-Party Complaint contains no allegations to which a

response is required. To the extent that numerical paragraph 4 of the Third-Party Complaint is

deemed to contain any allegations, those allegations are denied.

**PARTIES**

5. W.E.S.T. denies the allegations set forth in paragraph 5 of the Third-Party Complaint.

6. W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 6 of the Third-Party Complaint.

7. W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 7 of the Third-Party Complaint.

8. W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 8 of the Third-Party Complaint.

9. W.E.S.T. denies the allegations set forth in paragraph 9 of the Third-Party Complaint.

10. Numerical paragraph 10 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 10 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

11. Numerical paragraph 11 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 11 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

**GENERAL ALLEGATIONS**

12. W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 8 of the Third-Party Complaint.

13. W.E.S.T. admits the allegations set forth in paragraph 13 of the Third-Party Complaint.

14. W.E.S.T. admits the allegations set forth in paragraph 14 of the Third-Party Complaint.

15. W.E.S.T. admits the allegations set forth in paragraph 15 of the Third-Party Complaint.

16. W.E.S.T. admits the allegations set forth in paragraph 16 of the Third-Party Complaint.

17. W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 17 of the Third-Party Complaint.

18. W.E.S.T. admits the allegations set forth in paragraph 18 of the Third-Party Complaint.

19.    W.E.S.T. denies the allegations set forth in paragraph 19 of the Third-Party Complaint.

20.    W.E.S.T. denies the allegations set forth in paragraph 20 of the Third-Party Complaint.

21.    W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 21 of the Third-Party Complaint.

22.    W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 22 of the Third-Party Complaint.

23.    W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 23 of the Third-Party Complaint.

24.    W.E.S.T. denies having sufficient knowledge with which to admit or deny the allegations set forth in paragraph 24 of the Third-Party Complaint.

25.    Numerical paragraph 25 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 25 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

26.    Numerical paragraph 26 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 26 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

27.    W.E.S.T. denies the allegations set forth in paragraph 27 of the Third-Party Complaint.

28.    W.E.S.T. denies the allegations set forth in paragraph 28, 28(A), 28(B), 28(C), 28(D), 28(E) of the Third-Party Complaint.

29.    W.E.S.T. denies the allegations set forth in paragraph 29 of the Third-Party Complaint.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

4

30.    Numerical paragraph 30 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 30 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

31.    W.E.S.T. denies the allegations set forth in paragraph 31 of the Third-Party Complaint.

32.    W.E.S.T. denies the allegations set forth in paragraph 32 of the Third-Party Complaint.

33.    W.E.S.T. denies the allegations set forth in paragraph 33 of the Third-Party Complaint.

34.    W.E.S.T. denies the allegations set forth in paragraph 34 of the Third-Party Complaint.

35.    W.E.S.T. denies the allegations set forth in paragraph 35 of the Third-Party Complaint.

36.    W.E.S.T. denies the allegations set forth in paragraph 36 of the Third-Party Complaint.

37.    W.E.S.T. denies the allegations set forth in paragraph 37 of the Third-Party Complaint.

38.    W.E.S.T. denies the allegations set forth in paragraph 38 of the Third-Party Complaint.

39.    W.E.S.T. denies the allegations set forth in paragraph 39 of the Third-Party Complaint.

40.    W.E.S.T. denies the allegations set forth in paragraph 40 of the Third-Party Complaint.

41.    W.E.S.T. denies the allegations set forth in paragraph 41 of the Third-Party Complaint.

**THIRD CAUSE OF ACTION**

**(Implied Indemnity)**

42.    Numerical paragraph 42 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 42 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

43.    W.E.S.T. denies the allegations set forth in paragraph 43 of the Third-Party Complaint.

**FOURTH CAUSE OF ACTION**

**(Negligence)**

44.    Numerical paragraph 44 of the Third-Party Complaint contains no allegations to which a response is required.  To the extent that numerical paragraph 44 of the Third-Party Complaint is deemed to contain any allegations, those allegations are denied.

45.    W.E.S.T. denies the allegations set forth in paragraph 45 of the Third-Party Complaint.

46.    W.E.S.T. denies the allegations set forth in paragraph 46 of the Third-Party Complaint.

47.    W.E.S.T. denies the allegations set forth in paragraph 47 of the Third-Party Complaint.

48.    W.E.S.T. denies the allegations set forth in paragraph 48 of the Third-Party Complaint.

49.    W.E.S.T. denies the allegations set forth in paragraph 49 of the Third-Party Complaint.

50.    W.E.S.T. denies the allegations set forth in paragraph 50 of the Third-Party Complaint.

51.    W.E.S.T. denies the allegations set forth in paragraph 51 of the Third-Party Complaint.

52.    W.E.S.T. denies the allegations set forth in paragraph 52 of the Third-Party Complaint.

53.    W.E.S.T. denies the allegations set forth in paragraph 53 of the Third-Party Complaint.

54.    W.E.S.T. denies the allegations set forth in paragraph 54, 54(A), 54(B), 54(C), 54(D) of the Third-Party Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Third-Party Complaint fails to state a claim against W.E.S.T upon which to relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

On May 19, 2006, the President of Lapmaster International signed a customs power of attorney appointing W.E.S.T. as its customs broker and freight forwarder. (Exhibit A)  Among other things, in this agreement, Lapmaster International acknowledged receipt of WEST Forwarding Services Terms and Conditions of Service governing all transactions between the Parties. Paragraph 21 of those Terms and Conditions reads as follows:

21. Governing Law: Consent to Jurisdiction and Venue.  These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Ohio without giving consideration to principals [sic] of conflict law.  The customer agrees as follows:

    (a)  irrevocably consents to the jurisdiction of the United States District Court and the State Courts of Ohio.

    **(b)  Agrees that any action relating to the services performed by Company shall only be brought in said courts.**

    (c)  Consent to the exercise of in personam jurisdiction by said courts over it, and

    (d)  Further agrees that any action to enforce a judgment may be instituted in any jurisdiction.  (emphasis added.)

Accordingly this court lacks jurisdiction over the claims asserted against W.E.S.T.

### THIRD AFFIRMATIVE DEFENSE

On May 19, 2006, the President of Lapmaster International signed a customs power of attorney appointing W.E.S.T. as its customs broker and freight forwarder. (Exhibit A)  Among other things, in this agreement, Lapmaster International acknowledged receipt  of WEST Forwarding Services Terms and Conditions of Service governing all transactions between the Parties. Paragraph 9 of those Terms and Conditions reads as follow:

**9. Disclaimers: Limitation of Liability**

(a)    Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;

(b)    Subject to (c) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;

(c)    In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(d)    In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:

    (i)  where the claim arises from activities other than those relating to customs brokerage, $50.00 per entry or the amount of brokerage fees paid to the Company for the entry, which is less;

    (ii) where the claim arises from activities relating to "Customs business," 50.00 per entry or the amount of brokerage fees paid to the Company for the entry, whichever is less;

(e)    In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibly of such damages.

Accordingly, the liability of W.E.S.T., if any, is limited by this contractual provision.

#### FOURTH AFFIRMATIVE DEFENSE

On May 19, 2006, the President of Lapmaster International signed a customs power of attorney appointing W.E.S.T. as its customs broker and freight forwarder. (Exhibit A)  Among other things, in this agreement, Lapmaster International acknowledged receipt  of WEST Forwarding Services Terms and Conditions of Service governing all transactions between the Parties. Paragraph 4 of those Terms and Conditions reads as follow:

**4. No liability for the selection or services of third parties and/or routes) actions or inactions of.**  Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and Company shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the action(s) or inaction(s) a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the customer, which shall be liable for any charges or cost incurred by the Company.

Accordingly, the liability of W.E.S.T., if any, is limited by this contractual provision.

#### FIFTH AFFIRMATIVE DEFENSE

On May 19, 2006, the President of Lapmaster International signed a customs power of attorney appointing W.E.S.T. as its customs broker and freight forwarder. (Exhibit A)  Among other things, in this agreement, Lapmaster International acknowledged receipt  of WEST Forwarding Services Terms and Conditions of Service governing all transactions between the Parties.  Paragraph 7 of those Terms and Conditions reads as follow:

**7. Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instruction from the Customer, which must agree to pay any charges therefore in the absence of written instruction or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

W.E.S.T. invokes any and all exculpatory clauses and limitations of liability contained in any bills of lading, receipts and tariffs issued by other parties.

### SIXTH AFFIRMATIVE DEFENSE

The alleged damages complained of were caused or contributed to by the negligence or culpable conduct of parties other than W.E.S.T. and W.E.S.T is, therefore, not liable to Third-Party Plaintiff or, alternatively, the amount of damages recoverable by Third-Party Plaintiff must be diminished in the proportion which the negligence or culpable conduct attributable to Third-Party Plaintiff bears to the negligence or culpable conduct which caused the damage.

### SEVENTH AFFIRMATIVE DEFENSE

The alleged damages were caused and brought about by an intervening and superseding cause and were not caused by W.E.S.T., or by a person for whom W.E.S.T. is responsible.

**WHEREFORE,** W.E.S.T., demands judgment dismissing Third-Party Complaint in its

entirety or, alternatively, a judgment limiting its liability pursuant to the foregoing, together with the

costs and disbursements of this action and such other and further relief which this Court deems just

and proper.

Dated: June 16, 2008

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
**And GLAD & FERGUSON, PA**
505 Sansome Street, Suite 1475
San Francisco, CA 94111
Tel: 415-986-1088
Fax: 415-986-2271
Email: eshibles@strtrade.com

By: /s/Elise Shibles
    ELISE SHIBLES
 *Attorneys for W.E.S.T. Forwarding Services*

Edward M. Joffe, *Of Counsel\**
Florida Bar No. 314242
**SANDLER, TRAVIS & ROSENBERG, P.A.**
The Waterford - Suite 600
5200 Blue Lagoon Drive
Miami, Florida 33126
Tel.    (305) 267-9200
Fax    (305) 267-5155
Email:  ejoffe@strtrade.com

* Not admitted in California; pro hac vice application submitted 06/06/08

W.E.S.T. Forwarding Services Answer and Affirmative Defenses to Hartford Fire Insurance Co Third Party Complaint

**PROOF OF SERVICE**

I, Elise Shibles, declare under penalty of perjury that the following facts are true and correct:

I am employed by the law firm of Sandler, Travis & Rosenberg and Glad & Ferguson, P.A., whose address is 505 Sansome Street, Suite 1475, San Francisco, CA 94111.  I am over the age of 18 years, and not a party to this action.

On June 16, 2008, I served the following document:

**W.E.S.T. FORWARDING SERVICES ANSWER AND AFFIRMATIVE DEFENSES TO HARTFORD FIRE INSURANCE CO. THIRD PARTY COMPLAINT**

by the CM/ECF notification system to the following attorneys of record:

**Matthew S. Conant, Esq.**
Email: msc@llcllp.com

**Lori Ann Sebransky, Esq.**
Email: las@llcllp.com

**Jeffrey D. Cohen, Esq.**
Email: jcohen@freightlaw.net

**John F. Hughes, Esq.**
Email: jhughes@gordonrees.com

**Christopher James Brennan, Esq.**
Email: cbrennan@blwlawfirm.com

**Michael Joseph Daley, Esq.**
Email: mdaley@rallaw.com

**Paul Keenan, Esq.**
Email: pkeenan@freightlaw.net

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this proof of service was executed on June 16, 2008, at San Francisco, CA.

/s/ Elise Shibles
Elise Shibles

# EXHIBIT A

06-01-06    05:47pm    From-Lapmaster International              8479673903        T-092    P.002/002    F-296

**CUSTOMS POWER OF ATTORNEY/**
IEN/IRS # 20-0183843    **DESIGNATION AS EXPORT FORWARDING AGENT**
and
**Acknowledgement of Terms and Conditions**

✓ appropriate box

☐ Individual
☐ Partnership
☒ Corporation
☐ Sole Proprietorship
☒ Limited Liability Company

Copyright 1995, National Customs Brokers and Forwarders Association of America, Inc.
(Revised 01/00)

LAPIN

KNOW ALL MEN BY THESE PRESENTS: That, ✓ Lapmaster International _____ doing
(Full name of individual, partnership, corporation, sole proprietorship, or limited liability company) (identify)

business as a ✓ CORPORATION Limited Liability Co. under the laws of the State of ✓ Illinois ,
(Individual, partnership, corporation, sole proprietorship, or limited liability company) (insert one)

residing or having a principal place of business at ✓ 6400 W. Dakton St. Morton Grove IL 60053 hereby constitutes and.

appoints ✓ World Express Shipping Transportation and Forwarding Services, Inc. , its officers, employees, and/or specifically authorized agents, to act for and
D/B/A WEST Forwarding Services
(Grantee's Name)

on its behalf as a true and lawful agent and attorney of the grantor for and in the name, place and stead of said grantor, from this date,

in the United States (the "territory") either in writing, electronically, or by other authorized means, to:

Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet or any other documents required by law or regulation in connection with the importation, exportation, transportation, of any merchandise in or through the customs territory, shipped or consigned by or to said grantor;

Perform any act or condition which may be required by law or regulation in connection with such merchandise deliverable to said grantor; to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect drawback; and to make, sign, declare, or swear to any statement or certificate required by law or regulation for drawback purposes, regardless of whether such document is intended for filing with Customs;

Sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits or statements in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;

Authorize other Customs Brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; if the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to other laws of the territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the dates of its execution);

Appointment as Forwarding Agent: Grantor authorizes the above Grantee to act within the territory as lawful agent and sign or endorse export documents (i.e., commercial invoices, bill of lading, insurance certificates, drafts and any other document) necessary for the completion of an export on grantor's behalf as may be required under law and regulation in the territory and to appoint forwarding agents on grantor's behalf; WEST Forwarding

Grantor acknowledges receipt of ✓ Services _____ Terms and Conditions of Service governing all transactions between the Parties.
(Grantee's Name)

If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor.

IN WITNESS WHEREOF, the said ✓ Lapmaster International _____
(Full name of company)

caused these presents to be sealed and signed: (Signature) ✓ _____

(Capacity) ✓ PRESIDENT _____ Date: 5/19/06

Witness: (if required) _____

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

APPERSON PRINT MANAGEMENT SERVICES • NCBFAA-2 • WHSE. NO. 02080

# TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

**1. Definitions.**
(a) "Company" shall mean World Express Shipping Transportation and Forwarding Services, Inc. dba W.E.S.T. Forwarding Services, its subsidiaries, related companies, agents and/or representatives;
(b) "Customer" shall mean the person for which the Company is rendering service, as well as its agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;
(c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;
(d) "Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating carrier";
(e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

**2. Company as agent.** The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export documentation on behalf of the Customer and other dealings with Government Agencies; as to all other services, Company acts as an independent contractor.

**3. Limitation of Actions.**
(a) Unless Otherwise Mandated by a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to the claim. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.
(b) All suits against Company must be filed and properly served on Company as follows:
(i) For claims arising out of ocean transportation, within one (1) year from the date of loss;
(ii) For claims arising out of air transportation, within two (2) years from the date of the loss;
(iii) For claims arising out of the preparation and/or submission of an import entry(s), within seventy five (75) days from the date of liquidation of the entry(ies);
(iv) For any and all other claims of any other type, within two (2) years from the date of the loss or damage.

**4. No liability for the selection or services of third parties and/or route(s) actions or inactions of.** Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and Company shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the actions of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

**5. Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

**6. Reliance On Information Furnished.**
(a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs Service, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customers behalf;
(b) In preparing and submitting customs entries, export declarations, applications, documentation and/or export data to the United States or a third party, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to insure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the Customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

**7. Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefor; in the absence of written instruction or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

**8. Insurance.** Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf. If company obtains insurance at customer's request, customer shall pay all premiums and costs in connection with procuring requested insurance.

**9. Disclaimers; Limitation of Liability.**
(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;
(b) Subject to (c) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing to Customer prior to rendering services for the covered transaction(s).
(d) In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:
(i) where the claim arises from activities other than those relating to customs business, $50.00 per shipment or transaction, or
(ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to the Company for the entry, whichever is less;
(e) In no event shall Company be liable on consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

**10. Advancing Money.** All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

**11. Indemnification/Hold Harmless.** The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of customers merchandise and/or any conduct of the Customer, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims. In the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

**12. C.O.D. or Cash Collect Shipments.** Company will use reasonable care regarding written instructions relating to "Cash/Collect on Delivery (C.O.D.)" Shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have no liability if the bank or consignee refuses to pay for the shipment.

**13. Costs of Collection.** In any dispute involving monies owed to Company, the Company, if successful shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to in writing by Company.

**14. General Lien and Right To Sell Customer's Property.**
(a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;
(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or an irrevocable letter of credit, if in the amount due in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction retain the amount due company, and any net proceeds remaining thereafter shall be refunded to Customer.

**15. No Duty To Maintain Records For Customer.** Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC § 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

**16. Obtaining Binding Rulings, Filing Protest, etc.** Unless requested by Customer in writing and agreed to by Company, Company shall be under no obligation to undertake any pre or post Customer release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of protest(s) and/or protest, etc.

**17. Preparation and Issuance of Bills of Lading.** Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc. unless specifically requested to do so in writing by Customer on its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

**18. No Modification or Amendment Unless Written.** These terms and conditions may only be modified, altered or amended in writing signed by both Customer and Company. Any attempt to unilaterally modify, alter or amend same shall be null and void.

**19. Compensation of Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and all other agencies selected by the Company to transport and deal with the goods and such compensation in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

**20. Severability.** In the event any Paragraph(s) and/or subparagraph(s), herein shall be held to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

**21. Governing Law; Consent to Jurisdiction and Venue.** The customer agrees as follows:
(a) irrevocably consents to the jurisdiction of the United States District Court and the State Courts of Ohio.
(b) agrees that any action relating to the services performed by Company shall only be brought in said courts;
(c) consent to the exercise of in personam jurisdiction by said courts over it and
(d) further agrees that any action to enforce a judgment may be instituted in any jurisdiction.