Elise Shibles, Esq.
**SANDLER, TRAVIS & ROSENBERG
AND GLAD & FERGUSON, P.C.**
505 Sansome Street, Suite 1475
San Francisco, CA  94111
Telephone: (415) 986-1088
Facsimile:  (415) 986-2271
*Attorneys for W.E.S.T. Forwarding Services*

Edward M. Joffe, *Of Counsel\**
Florida Bar No. 314242
**SANDLER, TRAVIS & ROSENBERG, P.A.**
The Waterford - Suite 600
5200 Blue Lagoon Drive
Miami, Florida 33126
Tel.    (305) 267-9200
Fax    (305) 267-5155
Email:  ejoffe@strtrade.com

\* Admitted pro hac vice 6-16-08

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**W.E.S.T. Forwarding Services' Motion to Dismiss the Hartford Fire Insurance Co. and Lapmaster's Third party Complaints Alternative Summary Judgment**

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC., )<br>       Plaintiff, )<br>   v. )<br>LAPMASTER INTERNATIONAL, LLC AND )<br>HARTFORD INSURANCE CO. )<br>       Defendants. )<br>LAPMASTER INTERNATIONAL, LLC )<br>       Counterclaimant, )<br>   v. )<br>MASON AND DIXON INTERMODAL, INC., )<br>       Counterclaimant. )<br>)<br>) | Case No. CV-08-1232-VRW<br><br>**W.E.S.T. FORWARDING SERVICES' MOTION TO DISMISS THE HARTFORD FIRE INSURANCE CO. AND LAPMASTER'S THIRD PARTY COMPLAINTS, OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT**<br><br>**Hearing Date: September 11, 2008<br>Time: 2:30P.M.<br>Courtroom No. 6<br>Judge Vaughn R. Walker** |

LAPMASTER INTERNATIONAL, LLC )
      Third-Party Plaintiff, )
  v. )
W.E.S.T. FORWARDING SERVICES )
      Third-Party Defendant. )
)
)
HARTFORD FIRE INSURANCE COMPANY, )
individually and as subrogee of Lapmaster )
International LLC., )
      Third-Party Plaintiff, )
  v. )
ITG TRANSPORTATION SERVICES, INC.; )
WORLD EXPRESS SHIPPING,
TRANSPORTATION AND FORWARDING
SERVICES, INC. d/b/a/ W.E.S.T. FORWARDING
SERVICES; DOES 1 through X, inclusive
      Third-Party Defendants.

W.E.S.T. FORWARDING SERVICES,
      Counter-Claim Plaintiff
  v.
MASON AND DIXON INTERMODAL, INC.,
      Counter-Claim Defendant.

Pursuant to L.R. 7-2, Third-Party Defendant, W.E.S.T. Forwarding Services, Inc. ("W.E.S.T."), files this Motion to Dismiss The Hartford Fire Insurance Co. and Lapmaster's Third

1  Party Complaints, or in the Alternative, Summary Judgment. This Motion is set for hearing in front of
2  Judge Walker on Thursday, September 11, 2008 at 2:30 P.M. in Courtroom 6.

3  Pursuant to Rule 12(b) (2) and (3), Fed. R. Civ. Pro., the Third-Party Defendant, W.E.S.T.
4  Forwarding Services, Inc. ("W.E.S.T."), moves this court for an order dismissing the third party
5  complaints filed against it by the Hartford Fire Insurance Company ("Hartford") and Lapmaster
6  International, LLC. ("Lapmaster") for lack of personal jurisdiction and improper venue. The contract
7  between the parties provides that any action between the parties only be brought in the courts of Ohio.
8
9  In the alternative, pursuant to Rule 56, Red. R. Civ. Pro., the Third-Party Defendant, W.E.S.T.
10 Forwarding Services, Inc. ("W.E.S.T."), moves this court for a summary judgment dismissing the
11 third party actions brought against it by the Hartford Fire Insurance Company ("Hartford") and
12 Lapmaster International, LLC. ("Lapmaster") on the ground that based upon the undisputed facts, this
13 court lacks personal jurisdiction and venue over this action. The contract between the parties provides
14 that any action between the parties only be brought in the courts of Ohio. have exclusive jurisdiction.
15
16                                   **MEMORANDUM OF LAW**

17 In support of this motion, W.E.S.T. is submitting the declaration of Claire Goldenberg, who
18 has been employed as a Sales Executive at W.E.S.T. since November 2004. W.E.S.T. provides
19 services as a customs house broker and international freight forwarder. Among her job
20 responsibilities, Ms. Goldenberg solicited new business in the areas of customs brokerage, and freight
21 forwarding for both importing and exporting. On or about March 2005, Claire Goldenberg made a
22 sales call on Lapmaster International, LLC ("Lapmaster"), and met with Percy Honaker, who among
23 other things, handled the transportation of goods for Lapmaster. Throughout the next year she made
24 several follow up visits to Lapmaster. The materials that she provided at each visit included a packet
25 of information about W.E.S.T.'s services, the packet contained a customs power of attorney, which
26 we required for any new customer. [Goldenberg Decl. ¶ 3]
27
28

In May 2006 Lapmaster decided to retain W.E.S.T.'s services to handle importation and customs brokerage. Lapmaster's president, Brian Nelson, signed the power of attorney, which was returned to us as a copy, a copy of which is attached as **Exhibit A** to the Declaration of Claire Goldenberg. [Goldenberg Decl. ¶ 4]

The power of attorney referenced W.E.S.T.'s Terms and Conditions, which were provided. Prior to the events that lead to this litigation, W.E.S.T. handled over a hundred import shipments for Lapmaster. For each shipment, W.E.S.T. invoiced Lapmaster on a standard form invoice. On the front of the invoice it states: This order is subject to the Terms and Conditions, on the reverse side contained our Terms and Conditions a copy of which is attached as **Exhibit B**. [Goldenberg Decl. ¶ 6]

At no time did anyone from Lapmaster objected to or asked to be release from any of these Terms and Conditions.    [Goldenberg Decl. ¶ 7]

According to W.E.S.T.'s Terms & Conditions any suit brought against it must be file in Ohio.

21. Governing Law: Consent to Jurisdiction and Venue. These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Ohio without giving consideration to principals [sic] of conflict law. The customer agrees as follows:
   **(a)    irrevocably consents to the jurisdiction of the United States District Court and the State Courts of Ohio.**
   **(b)    Agrees that any action relating to the services performed by Company shall only be brought in said courts.**
   (c)    Consent to the exercise of in personam jurisdiction by said courts over it, and
   (d)    Further agrees that any action to enforce a judgment may be instituted in any jurisdiction.  **(Emphasis added.)** [Goldenberg Decl. Ex. B ]

Accordingly this court lacks jurisdiction over the claims asserted against W.E.S.T.

## **LEGAL ARGUMENT**

It is well settled law that forum selection clauses are enforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *Holland America Line Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450 (9th Cir. 2007) (In the light of present-day commercial realities and expanding international trade,

a forum clause should control absent a strong showing that it should be set aside.) *Michael Omstead, et al. v. Dell, Inc.*, 473 F.Supp.2d 1018 ( ND Cal., 2007); *Marco Forwarding Co. v. Continental Cas Co.*, 430 F.Supp.2d 1289 (S.D. Fla., 2005)  (A Forum selection clause in an admiralty case may be overcome only by a clear showing that the clause is unreasonable under the circumstances); *A.P. Moller-Maersk A/S d/b/a Maersk Sealand v. Ocean Express Miami*, 2008 WL 1859497 (S.D.N.Y. April 25, 2008) (A Forum selection clause in a commercial contract is presumed to be prima facie valid, and should be enforced unless the resisting party clearly shows that enforcement of the clause would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.)

Even without this written agreement, the payment of over 100 invoices establishes a course of dealings that the invoices' terms and conditions were a part of the parties' agreement.  The decision, *Capitol Converting Equipment Inc. v. LEP Transport, Inc.* 965 F.2d 391 (7th Cir. 1992) is instructive.  Like here, each of LEP's invoices for its services, at the bottom of the front appeared the instructions "SEE REVERSE SIDE FOR TRADING CONDITIONS." On the reverse side were standard terms and conditions similar to those on the W.E.S.T. invoice. The District Court enforced the terms and conditions, deciding that a prior course of dealing between LEP and Capitol incorporated LEP's standard terms and conditions into its bargain with Capitol. In affirming the District Court's decision the Seventh Circuit noted:

> A course of dealing is a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." The parties' previous conduct may give "particular meaning to and supplement or qualify the terms of their later agreement." …. A course of dealing, rather than modifying an agreement, may become part of an agreement at its inception by "explicit provisions of the agreement or by tacit recognition." U.C.C. Official Comment 3. It reveals the "bargain of the parties in fact,", informing the nature and the extent of the parties' obligation to each other. Where, as here, an agreement is silent on a particular term, a course of dealing may fill the void. This is made clear by the fact that a course of dealing may "supplement or qualify" the terms of the parties' agreement as well as provide interpretive guidance on terms explicit in that agreement. … Here, the parties' course

of dealing supplemented their oral agreement, which was silent as to LEP's liability to Capitol.

[Id. at 395-396]

This approach consistently has been followed in similar transportation cases. *Perfumeria Ultra, v. Miami Customs Service*, 231 F.Supp.2d 1218 (S.D. Fla. 2002); *Insurance Co. of North America, v. NNR Air cargo Service (USA), Inc.*, 201 F.3d 1111 (9th Cir. 2000); *Hoogwegt U.S., Inc. v. Schenker Intern. Inc.*, 121 F. Supp 2d 1228 (N.D. Ill. 2000); *Independent Machinery, Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752 (N.D. Ill. 1994). *See also*, *Fishman & Tobin, Inc. v. Tropical Shipping Cont.*, 240 F.3d 956, 963 n.8 (11th Cir. 2001). (Evidence of course of dealings may establish both parties understanding of their agreement.)

Finally, Hartford, under the laws of subrogation, acquired no better rights than Lapmaster and is subject to the same contractual restrictions in pursuing its actions. *U.S. v. California*, 507 U.S. 746, 756 (1993); *Board of Administration of Public Employee's Retirement System v. Glover*, 34 Cal. 3d 906,915,  671 P.2d 834,840, 196 Cal. Rptr. 330, 336 (1983)(Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source.)

In conclusion, the third party complaints against W.E.S.T. must be dismissed.

Dated: July 23, 2008

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
The Waterford - Suite 600
5200 Blue Lagoon Drive
Miami, Florida 33126
Tel.   (305) 267-9200
Fax    (305) 267-5155
Email:  ejoffe@strtrade.com

By:   /s/ Edward M. Joffe
          Edward M. Joffe
          Florida Bar No. 314242
* Admitted pro hac vice 6-16-08
*Attorneys for W.E.S.T. Forwarding Services*

Local Counsel:
Elise Shibles
**SANDLER, TRAVIS & ROSENBERG, P.A. AND GLAD AND FERGUSON**
505 Sansome Street, Suite 1475
San Francisco, CA 94111
Tel: 415-986-1088
Fax: 415-986-2271
Email: eshibles@strtrade.com

# PROOF OF SERVICE

I, Edward M. Joffe, declare under penalty of perjury that the following facts are true and correct:

I am employed by the law firm of Sandler, Travis & Rosenberg whose address is 5200 Blue Lagoon Drive, Suite 600, Miami, FL 33126. I am over the age of 18 years, and not a party to this action.

On July 23, 2008, I served the following document:

**W.E.S.T. FORWARDING SERVICES' MOTION TO DISMISS THE HARTFORD FIRE INSURANCE CO. AND LAPMASTER'S THIRD PARTY COMPLAINTS OR IN THE ALTERNATIVE SUMMARY JUDGMENT**

by the CM/ECF notification system to the following attorneys of record:

**Matthew S. Conant, Esq.**
Email: msc@llcllp.com

**Lori Ann Sebransky, Esq.**
Email: las@llcllp.com

**Jeffrey D. Cohen, Esq.**
Email: jcohen@freightlaw.net

**John F. Hughes, Esq.**
Email: jhughes@gordonrees.com

**Christopher James Brennan, Esq.**
Email: cbrennan@blwlawfirm.com

**Michael Joseph Daley, Esq.**
Email: mdaley@rallaw.com

**Paul Keenan, Esq.**
Email: pkeenan@freightlaw.net

**Elise Shibles, Esq.**
Email: eshibles@strtrade.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this proof of service was executed on July 23, 2008, at Miami, FL.

/s/ Edward M. Joffe
Edward M. Joffe

1  Elise Shibles, Esq.
   **SANDLER, TRAVIS & ROSENBERG
2  AND GLAD & FERGUSON, P.C.**
   505 Sansome Street, Suite 1475
3  San Francisco, CA 94111
   Telephone: (415) 986-1088
4  Facsimile: (415) 986-2271
   *Attorneys for W.E.S.T. Forwarding Services*

5  Edward M. Joffe, *Of Counsel**
6  Florida Bar No. 314242
   **SANDLER, TRAVIS & ROSENBERG, P.A.**
7  The Waterford - Suite 600
   5200 Blue Lagoon Drive
8  Miami, Florida 33126
   Tel.   (305) 267-9200
9  Fax    (305) 267-5155
10 Email: ejoffe@strtrade.com

11 * Not admitted in California; pro hac vice application submitted 06/06/08

12
13                 UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA

-1-

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC., <br>     Plaintiff, <br> v. <br> LAPMASTER INTERNATIONAL, LLC AND <br> HARTFORD INSURANCE CO. <br>     Defendants. <br><br> LAPMASTER INTERNATIONAL, LLC <br>     Counterclaimant, <br> v. <br> MASON AND DIXON INTERMODAL, INC., <br>     Counterclaimant. <br><br> HARTFORD FIRE INSURANCE COMPANY, <br> individually and as subrogee of Lapmaster <br> International LLC., <br>     Third-Party Plaintiff, <br> v. <br> ITG TRANSPORTATION SERVICES, INC.; <br> WORLD EXPRESS SHIPPING, <br> TRANSPORTATION AND FORWARDING <br> SERVICES, INC. d/b/a/ W.E.S.T. FORWARDING <br> SERVICES; DOES 1 through X, inclusive <br>     Third-Party Defendants. <br><br> AND RELATED CROSS-ACTION | Case No. CV-08-1232-VRW <br><br> **DECLARATION OF CLAIRE GOLDENBERG IN SUPPORT OF W.E.S.T. FORWARDING SERVICES MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT DISMISSING THE THIRD PARTY ACTIONS BROUGHT BY LAPMASTER INTERNATIONAL, LLC AND HARTFORD INSURANCE CO.** |

I, Claire Goldenberg, hereby declare as follows:

1.     I am presently employed as a Sales Executive at W.E.S.T. Forwarding Services ("W.E.S.T."), and have held this position since November 2004. W.E.S.T. provides services as a customs house broker and international freight forwarder.

2.     Among my job responsibilities, I solicit new business in the areas of customs brokerage, and freight forwarding for both importing and exporting.

-2-

3.     On or about March 2005, I made a sales call on Lapmaster International, LLC ("Lapmaster"), and met with Percy Honaker, who among other things, handled the transportation of goods for Lapmaster. Throughout the next year I made several follow up visits to Lapmaster. The materials which I provided at each visit included a packet of information about W.E.S.T.'s services, the packet contained a customs power of attorney, which we required for any new customer.

4.     In May 2006 Lapmaster decided to retain our services to handle importation and customs brokerage. Lapmaster's president, Brian Nelson, signed the power of attorney which was returned to us as a copy, a copy of which is attached as **Exhibit A** to this Declaration.

5.     Please note that the power of attorney references our Terms and Conditions.

6.     Prior to the events that lead to this litigation W.E.S.T. handle over a hundred import shipments for Lapmaster. For each shipment W.E.S.T. invoiced Lapmaster on a standard form invoice, on the front of the invoice states: This order is subject to the Terms and Conditions, on the reverse side contained our Terms and Conditions a copy of which is attached as **Exhibit B**.

7.     At no time did anyone from Lapmaster objected to or asked to be release from any of these Terms and Conditions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 17, 2008, at Bensenville, Illinois.

_____
CLAIRE GOLDENBERG

-3-

# Exhibit A

06-01-06  05:47pm  From-Lapmaster International           8479673903           T-092  P.002/002  F-296

**CUSTOMS POWER OF ATTORNEY/
DESIGNATION AS EXPORT FORWARDING AGENT
and
Acknowledgement of Terms and Conditions**

IEN/IRS # 20-0183843

LAPIN

✓ appropriate box
☐ Individual
☐ Partnership
☒ Corporation
☐ Sole Proprietorship
☐ Limited Liability Company

Copyright 1995, National Customs Brokers and Forwarders Association of America, Inc.
(Revised 01/00)

KNOW ALL MEN BY THESE PRESENTS: That, ✓ **Lapmaster International** _____ doing
(Full name of individual, partnership, corporation, sole proprietorship, or limited liability company) (Identify)

business as a ✓ **Corporation** Limited Liability Co. under the laws of the State of ✓ **Illinois**,
(Individual, partnership, corporation, sole proprietorship, or limited liability company) (Insert one)

residing or having a principal place of business at ✓ **6400 W. Oakton St, Morton Grove IL 60053**, hereby constitutes and
appoints ✓ **World Express Shipping Transportation and Forwarding Services, Inc.**
D/B/A WEST Forwarding Services, its officers, employees, and/or specifically authorized agents, to act for and
(Grantee's Name)

on its behalf as a true and lawful agent and attorney of the grantor for and in the name, place and stead of said grantor, from this date,

in the United States (the "territory") either in writing, electronically, or by other authorized means, to:

Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet or any other documents required by law or regulation in connection with the importation, exportation, transportation, of any merchandise in or through the customs territory, shipped or consigned by or to said grantor;

Perform any act or condition which may be required by law or regulation in connection with such merchandise deliverable to said grantor; to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect drawback; and to make, sign, declare, or swear to any statement or certificate required by law or regulation for drawback purposes, regardless of whether such document is intended for filing with Customs;

Sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits or statements in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;

Authorize other Customs Brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasury of the United States; if the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to other laws of the territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the dates of its execution);

Appointment as Forwarding Agent: Grantor authorizes the above Grantee to act within the territory as lawful agent and sign or endorse export documents (i.e., commercial invoices, bill of lading, insurance certificates, drafts and any other document) necessary for the completion of an export on grantor's behalf as may be required under law and regulation in the territory and to appoint forwarding agents on grantor's behalf;

Grantor acknowledges receipt of ✓ **WEST Forwarding Services** _____ Terms and Conditions of Service governing all transactions between the Parties.
(Grantee's Name)

If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor.

IN WITNESS WHEREOF, the said ✓ **Lapmaster International** _____
(Full name of company)

caused these presents to be sealed and signed: (Signature) ✓ _____

(Capacity) ✓ **PRESIDENT** _____ Date: **5/19/06**

Witness: (if required) _____

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

APPERSON PRINT MANAGEMENT SERVICES - NCBFAA-2 • WHSE. NO. 02080

WEST0060

## TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

1. **Definitions.**
   (a) "Company" shall mean World Express Shipping Transportation and Forwarding Services, Inc. dba W.E.S.T. Forwarding Services, Its subsidiaries, related companies, agents and/or representatives;
   (b) "Customer" shall mean the person for which the Company is rendering service, as well as its agents and/or representatives, including, but not limited to, shippers, importers, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;
   (c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;
   (d) "Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating carrier";
   (e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

2. **Company as agent.** The Company acts as the "agent" of the Customer for the purposes of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export documentation on behalf of the Customer and other dealings with Government Agencies, as to all other services, Company acts as an independent contractor.

3. **Limitation of Actions.**
   (a) Unless Otherwise Mandated by a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise the claim. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.
   (b) All suits against Company must be filed and properly served on Company as follows:
      (i) For claims arising out of ocean transportation, within one (1) year from the date of loss;
      (ii) For claims arising out of air transportation, within two (2) years from the date of the loss;
      (iii) For claims arising out of the preparation and/or submission of an Import entry(s), within seventy five (75) days from the date of liquidation of the entry(s);
      (iv) For any and all other claims of any other type, within two (2) years from the date of the loss or damage.

4. **No liability for the selection or services of third parties.** Unless services are performed by persons or firms engaged pursuant to express written Instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of the third party; all claims in connection with the act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

5. **Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for information purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

6. **Reliance On Information Furnished.**
   (a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs Service, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customers behalf;
   (b) In preparing and submitting customs entries, export declarations, applications, documentation and/or export data to the United States and/or a third party, the Company relies on the correctness of all documentation, whether in writing or electronic format, and all information furnished by Customer; Customer shall use reasonable care to insure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the Customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

7. **Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefor; In the absence of written instruction or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

8. **Insurance.** Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf, If company obtains insurance at customer's request, customer shall pay all premiums and costs in connection with procuring requested Insurance.

9. **Disclaimers; Limitation of Liability.**
   (a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;
   (b) Subject to (c) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
   (c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
   (d) In the absence of additional coverage under (c) above, the Company's liability shall be limited to the following:
      (i) where the claim arises from activities other than those relating to customs business, $50.00 per shipment or transaction, or
      (ii) where the claim arises from activities relating to "Customs business", $50.00 per entry or the amount of brokerage fees paid to the Company for the entry, whichever is less.
   (e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

10. **Advancing Money.** All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer. The granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

11. **Indemnification/Hold Harmless.** The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of customers merchandise and/or any conduct of the Customer, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

12. **C.O.D. or Cash Collect Shipments.** Company shall use reasonable care regarding written instructions relating to "Cash/Collect on "Deliver (C.O.D.)" Shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have no liability if the bank or consignee refuses to pay for the shipment.

13. **Costs of Collection.** In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to in writing by Company.

14. **General Lien and Right To Sell Customer's Property.**
   (a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or subsequent shipments;
   (b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
   (c) Unless, within thirty days of receiving notice of lien, Customer posts cash or an irrevocable letter of credit at 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction, retain the amount due company, and any net proceeds remaining thereafter shall be returned to Customer.

15. **No Duty To Maintain Records For Customer.** Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC § 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not acting as a "recordkeeper" or "recordkeeping agent" for Customer.

16. **Obtaining Binding Rulings, Filing Protest, etc.** Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protest, etc.

17. **Preparation and Issuance of Bills of Lading.** Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

18. **No Modification or Amendment Unless Written.** These terms and conditions may only be modified, altered or amended in writing signed by both Customer and Company. Any attempt to unilaterally modify, alter or amend same shall be null and void.

19. **Compensation of the Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and all other agencies selected by the Company to transport and deal with the goods and such compensation in connections with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

20. **Severability.** In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

21. **Governing Law; Consent to Jurisdiction and Venue.** These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Ohio without giving consideration to principals of conflict of law. The customer agrees as follows:
   (a) irrevocably consents to the jurisdiction of the United States District Court and the State Courts of Ohio;
   (b) agrees that any action relating to the services performed by Company, shall only be brought in said courts;
   (c) consent to the exercise of in personam jurisdiction by said courts over it, and
   (d) further agrees that any action to enforce a judgment may be instituted in any jurisdiction.

# Exhibit B

WORLD EXPRESS SHIPPING, TRANSPORTATION AND FORWARDING SERVICES INC., D/B/A
## W.E.S.T. FORWARDING SERVICES
INTERNATIONAL FREIGHT FORWARDERS • CUSTOMS BROKERS • NVOCC

FMC 3118-R
CHB 14627

HEAD OFFICE: 17851 JEFFERSON PARK, SUITE 101
MIDDLEBURG HEIGHTS, OH 44130
TEL: (440) 826-5055    FAX: (440) 826-5054

TO
Attn: MARY LYNN
LAPMASTER INTERNATIONAL LLC
501 W.ALGONQUIN ROAD
MT PROSPECT, IL 60056

CW 0102

| INVOICE NO. | INVOICE DATE | YOUR REFERENCE NO. |
|---|---|---|
| 1208409 | 11/05/07 | |

| PIECES | WEIGHT | DESCRIPTION |
|---|---|---|
| 1 | 2100KG | TTNU9491921 SINTER PRESS |

SHIPPER / CONSIGNEE

| ORIGIN / DESTINATION | CUSTOMER NUMBER |
|---|---|
| GERMANY, FED. REPUBLIC | LAPIN |

| ENTRY NO. | ENTRY DATE |
|---|---|
| 1208409-3 | |

| AIRLINE / STEAMSHIP | ARRIVAL / DEPARTURE |
|---|---|
| 34W42 | 11/04/07 |

| AWB / BL NO. | HAWB |
|---|---|
| CPRS 07298792761 | 731081513 |

REMARKS

| DESCRIPTION OF CHARGES | AMOUNT |
|---|---|
| Custom's Entry Fee | 100.00 |
| Messenger/Courier | 15.00 |
| Estimated Duty Deposit | 5865.86 |

PLEASE PAY THIS AMOUNT → 5980.86

IMPORTER MUST FURNISH MISSING DOCUMENTS WITHIN THE PERIOD OF TIME AS REQUIRED BY CUSTOMS

**NET CASH UPON RECEIPT OF INVOICE**
SEND PAYMENT TO:
17851 JEFFERSON PARK, SUITE 101, MIDDLEBURG HEIGHTS, OH 44130

THIS ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ON REVERSE SIDE.

If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker Therefore, If you pay by check, Customs charges may be paid with a separate check payable to "U.S Customs Service" which shall be delivered to Customs by the broker

## TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

1. **Definitions.**
   (a) "Company" shall mean World Express Shipping Transportation and Forwarding Services, Inc. dba W.E.S.T. Forwarding Services, its subsidiaries, related companies, agents and/or representatives;
   (b) "Customer" shall mean the person for which the Company is rendering service, as well as its agents and/or representatives, including, but not limited to, shippers, importers, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives.
   (c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;
   (d) "Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating carrier";
   (e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

2. **Company as agent.** The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export documentation on behalf of the Customer and other dealings with Government Agencies; as to all other services, Company acts as an independent contractor.

3. **Limitation of Actions.**
   (a) Unless Otherwise Mandated by a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to the claim. The failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.
   (b) All suits against Company must be filed and properly served on Company as follows:
   (i) For claims arising out of ocean transportation, within one (1) year from the date of loss;
   (ii) For claims arising out of air transportation, within two (2) years from the date of the loss or damage;
   (iii) For claims arising out of the preparation and/or submission of an import entry(s), within seventy five (75) days from the date of liquidation of the entry(s);
   (iv) For any and all other claims of any other type, within one (1) year from the date of loss.

4. **No liability for the selection or services of third parties and/or routes.** Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and shall be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the actions of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

5. **Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company and the Customer unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

6. **Reliance On Information Furnished.**
   (a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs Service, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customers behalf;
   (b) In preparing and submitting customs entries, export declarations, applications, documentation and/or export data to the United States and/or a third party, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to insure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the Customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

7. **Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefor; in the absence of written instruction or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

8. **Insurance.** Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf. If company obtains insurance at customer's request, customer shall pay all premiums and costs in connection with procuring requested insurance.

9. **Disclaimers; Limitation of Liability.**
   (a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;
   (b) Subject to (c) below, Customer agrees that it is in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
   (c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
   (d) In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:
   (i) where the claim arises from activities other than those relating to customs business, $50.00 per shipment or transaction, or
   (ii) where the claim arises from activities relating to "Customs business", $50.00 per entry or the amount of brokerage fees paid to the Company for the entry, whichever is less;
   (e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

10. **Advancing Money.** All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer. The granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

11. **Indemnification/Hold Harmless.** The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of customers merchandise and/or any conduct of the Customer, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

12. **C.O.D. or Cash Collect Shipments.** Company shall use reasonable care regarding written instructions relating to "CashCollect on 'Deliver (C.O.D.)' Shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have no liability if the bank or consignee refuses to pay for the shipment.

13. **Costs of Collection.** In any dispute involving monies owed to Company, the Company, it successful shall be entitled to all costs of collection, including reasonable attorneys fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to in writing by Company.

14. **General Lien and Right to Sell Customer's Property.**
   (a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or subsequent shipments;
   (b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
   (c) Unless, within thirty days of receiving notice of lien, Customer posts cash or an irrevocable letter of credit, if in the amount due in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction, retain the amount due company, and any net proceeds remaining thereafter shall be refunded to Customer.

15. **No Duty To Maintain Records For Customer.** Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC § 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s) but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

16. **Obtaining Binding Rulings, Filing Protest, etc.** Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protest, etc.

17. **Preparation and Issuance of Bills of Lading.** Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

18. **No Modification or Amendment Unless Written.** These terms and conditions may only be modified, entered or amended in writing, signed by both Customer and Company. Any attempt to unilaterally modify, alter or amend same shall be null and void.

19. **Compensation of Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and all other agencies selected by the Company to transport and deal with the goods and such compensation in connections with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of its components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, the Customer, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

20. **Severability.** In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

21. **Governing Law; Consent to Jurisdiction and Venue.** These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Ohio without giving consideration to principals of conflict of law. The customer agrees as follows:
    (a) irrevocably consents to the jurisdiction of the United States District Court and the State Courts of Ohio.
    (b) agrees that any action relating to the services performed by Company, shall only be brought in said courts;
    (c) consent to the exercise of in personam jurisdiction by said courts over it, and
    (d) further agrees that any action to enforce a judgment may be instituted in any jurisdiction.

WEST0061

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASON AND DIXON INTERMODAL, INC., <br>     Plaintiff, <br> v. <br> LAPMASTER INTERNATIONAL, LLC AND HARTFORD INSURANCE CO. <br>     Defendants. | Case No. CV-08-1232-VRW <br><br> **PROPOSED ORDER ON W.E.S.T. FORWARDING SERVICES' MOTION TO DISMISS THE HARTFORD FIRE INSURANCE CO AND LAPMASTER'S THIRD PARTY COMPLAINT, OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT** |
| LAPMASTER INTERNATIONAL, LLC <br>     Counterclaimant, <br> v. <br> MASON AND DIXON INTERMODAL, INC., <br>     Counterclaimant. | **Hearing Date: September 11, 2008** <br> **Time: 2:30P.M.** <br> **Courtroom No. 6** |
| LAPMASTER INTERNATIONAL, LLC <br>     Third-Party Plaintiff, <br> v. <br> W.E.S.T. FORWARDING SERVICES <br>     Third-Party Defendant. | |
| HARTFORD FIRE INSURANCE COMPANY, individually and as subrogee of Lapmaster International LLC., <br>     Third-Party Plaintiff, <br> v. <br> ITG TRANSPORTATION SERVICES, INC.; WORLD EXPRESS SHIPPING, TRANSPORTATION AND FORWARDING SERVICES, INC. d/b/a/ W.E.S.T. FORWARDING SERVICES; DOES 1 through X, inclusive <br>     Third-Party Defendants. | |
| W.E.S.T. FORWARDING SERVICES, <br>     Counter-Claim Plaintiff <br> v. <br> MASON AND DIXON INTERMODAL, INC., <br>     Counter-Claim Defendant. | |

1  THIS CAUSE HAS COME BEFORE the Court upon W.E.S.T.'s Motion to Dismiss the
2  Hartford Fire Insurance Co and Lapmaster's Third Party Complaints, or, in the Alternative, Summary
3  Judgment, and the Court having considered this motion and being otherwise duly advised, W.E.S.T.'s
4  Motion to Dismiss is granted as to The Hartford Fire Insurance Company and Lapmaster
5  International, LLC's Third-Party Complaints against it.

**ORDERED AND ADJUDGED** this _____ day of _____ 2008.

_____
The Honorable Vaughn R. Walker
United States District Court Judge